DURANT v DEPARTMENT OF EDUCATION (ON THIRD
REMAND)

Docket No. 161321. Submitted February 16, 1993, at Lansing. Decided
February 8, 1994, at 9:05 A.M. Leave to appeal sought.

Donald Durant and other residents of the Fitzgerald School
District and the Fitzgerald Public Schools brought an action for
mandamus in the Court of Appeals, seeking to compel the
Department of Education, the Department of Management and
Budget, and the State Treasurer to provide state funding of the
Fitzgerald Public Schools in the same proportion as the funding
in the 1978-1979 fiscal year, in accordance with the provisions
of the Headlee Amendment, Const 1963, art 9, §§ 25-34. The
Court, DANHOF, C.J., and M.F. CAVANAGH and D.R. FREEMAN,
JJ., dismissed the complaint on the ground that the plaintiffs
had not exhausted their administrative remedies. 110 Mich
App 351 (1981). The Supreme Court reversed and remanded the
case to the Court of Appeals for consideration of the merits of
the plaintiffs' claims. 413 Mich 862 (1982). On remand, the
Court, DANHOF, C.J., and M.F. CAVANAGH and MACKENZIE, JJ.,
dismissed the complaint on the ground that mandamus gener-
ally does not lie in cases involving unresolved factual disputes.
129 Mich App 517 (1983). The Supreme Court affirmed the
substantive findings of the Court of Appeals, but concluded that
the Court had erred in its reasoning and procedural disposition
of the case and remanded the case to the Court of Appeals with
instructions to appoint a special master to resolve the factual
disputes and to report the findings to the Court of Appeals. 424
Mich 364 (1985). The Court of Appeals appointed a special
master, Macomb Circuit Judge George R. Deneweth, who per-
mitted the plaintiffs to amend their complaint, denied the
defendants' motions for summary disposition, and reported his
findings of fact to the Court of Appeals. On second remand, the
Court, DANHOF, C.J., and GILLIS and MACKENZIE, JJ., remanded
to the special master for further findings concerning the cost to
the state of providing the state-mandated services and how
those costs related to the base year of 1978-1979 and held: (1)
Const 1963, art 9, § 29, which prohibits the state from reducing
the state-financed proportion of necessary costs of providing a
state-mandated activity or service, applies only to state-man-

dated educational activities or services that had been funded by categorical aid at the time of the ratification of § 29 in 1978; (2) the one-year statute of limitations applicable to claims under the Headlee Amendment, MCL 600.308a(3); MSA 27A.308(1)(3), was valid, and thus only the funding for fiscal years 1979-1980 and 1984-1985 was at issue; (3) the state's funding obligations under § 29 extended to the necessary costs of special education, special education transportation, driver education, and school lunch and supplemental milk programs, but did not extend to the funding of bilingual instruction; (4) the provision of Const 1963, art 5, § 20, which provides for budget reductions by executive order, did not apply to categorical aid; (5) the Legislature could not reduce categorical aid by operation of the base-revenue reduction provision of MCL 388.1621(4); MSA 15.1919(921)(4); and (6) plaintiffs were entitled to costs, including reasonable attorney fees, if it were determined that the defendants had failed to satisfy the mandate of § 29. 186 Mich App 83 (1990). The Supreme Court, without vacating the decision of the Court of Appeals, remanded "for reconsideration in light of the Supreme Court's decision in *Schmidt v Dep't of Ed,* 441 Mich 236 (1992)." 441 Mich 930 (1993).

On third remand, the Court of Appeals *held:*

1. Because the Supreme Court did not vacate the Court of Appeals decision on second remand and the Supreme Court decision in *Schmidt* did not address the issues concerning the statute of limitations, bilingual instruction, the applicability of § 29 to unrestricted aid, or the availability of costs and attorney fees, those issues are beyond the scope of the order of remand.

2. The Supreme Court holding in *Schmidt* is not inconsistent with the Court of Appeals decision on second remand that the "necessary costs" of § 29 should not be equated with the "actual costs" of the Fitzgerald Public Schools and that the special master should determine the cost of those services if the state had provided them.

3. The discussion in *Schmidt* concerning the fact that the state was not required by § 29 to fund local school systems' liability for the employer's portion of social security taxes for their teachers does not alter the Court of Appeals determination in the opinion on second remand that special education programs in the years in question, 1979-1980 and 1984-1985, were mandated by the state rather than federal law and were subject to the funding provisions of § 29.

4. Nothing in *Schmidt* conflicts with the Court of Appeals determination on second remand that the necessary costs of providing special education include the costs incurred in pro-

viding a regular education program, rather than merely the incremental costs incurred over and above the costs incurred in providing the regular program.

5. On remand, the special master must determine the necessary costs of the state-mandated services, must determine whether the state funded those services in the years at issue in the same proportion as it did in the base year, and must make its findings of fact and other determinations within six months. A new special master must be appointed to conduct the necessary proceedings.

Remanded to the special master for further proceedings.

*Hardy, Lewis, Pollard & Page, P.C.* (by *Dennis R. Pollard* and *Richard E. Kroopnick*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Paul J. Zimmer* and *Jane E. Woodfin,* Assistant Attorneys General, for the defendants.

Amicus Curiae:

*Hoekenga & Farrell, P.C.* (by *Daniel J. Hoekenga*), for the Michigan Education Association and the Warren Fitzgerald Education Association.

ON THIRD REMAND

Before: DOCTOROFF, C.J., and MACKENZIE and CORRIGAN, JJ.

PER CURIAM. By virtue of our Supreme Court's February 2, 1993, order, this original action under the Headlee Amendment, Const 1963, art 9, §§ 25-34, returns to this Court "for reconsideration in light of the Supreme Court's decision in *Schmidt v Dep't of Ed,* 441 Mich 236 [490 NW2d 584] (1992)." *Durant v Dep't of Ed,* 441 Mich 930 (1993).

At the outset, we note that all parties agree that

the scope of this remand is limited necessarily to those issues influenced by our Supreme Court's decision in *Schmidt.* Our Supreme Court neither reversed nor vacated this Court's previous decision, *Durant v Dep't of Ed (On Second Remand),* 186 Mich App 83; 463 NW2d 461 (1990). Accordingly, this is an interlocutory opinion and, to the extent our decision on second remand is otherwise not directly addressed by our application of *Schmidt* to the issues presented, that decision stands.

Plaintiffs, the Fitzgerald Public Schools and taxpayers within the school district, contend that for fiscal years beginning with fiscal year 1979-80, the Legislature has underfunded the school district with regard to "categorical" or state-mandated educational programs, in violation of Const 1963, art 9, § 29, which provides in relevant part:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law.

Before our decision on second remand, this Court issued an order appointing Macomb Circuit Court Chief Judge George R. Deneweth as the "special master" and remanded the case to him for development of the record and the taking of proofs. On second remand, this Court concluded that the record and findings of fact adduced by the special master were inadequate to permit definitive resolution of two key questions: What is the cost to the state, irrespective of the actual cost to the Fitzgerald Public Schools, of providing these mandatory programs for the relevant fiscal years? and, What portion of that cost was provided by the Legislature for the years at issue, and how does that

compare to the proportion of state funding for those services in the Headlee Amendment base year of 1978? See *Durant (On Second Remand), supra* at 114.

In addition to remanding to a special master for resolution of these questions, this Court on second remand held that the Headlee Amendment does not apply to unrestricted state aid, that the one-year period of limitation set forth at MCL 600.308a(3); MSA 27A.308(1)(3) is valid and limits plaintiffs' claims to fiscal years 1979-80 and 1984-85, and that the state's funding obligations under § 29 extend to the necessary costs of special education, special education transportation, driver education, and school lunch and supplemental milk programs for fiscal year 1978-79, but not to bilingual instruction. See generally *Durant (On Second Remand), supra.*

This Court further ruled that the authority to make budget reductions by executive order pursuant to Const 1963, art 5, § 20, does not apply to categorical aid and that the Legislature may not reduce categorical aid by operation of the base revenue reduction provision of § 21(4) of the State School Aid Act, MCL 388.1621(4); MSA 15.1919(921)(4). *Id.* Finally, this Court held that plaintiffs would be entitled to recover both costs and reasonable attorney fees if, on remand to a special master, they are successful in establishing that defendants underfunded the district in violation of § 29. *Id.*

At the present stage of this litigation, the parties are in agreement that the Supreme Court's decision in *Schmidt* does not address their respective positions concerning the statute of limitations, bilingual instruction, the applicability of § 29 to unrestricted aid, or the availability of costs and attorney fees. Thus, further discussion of these

issues is deemed beyond the scope of the Supreme Court's most recent remand order. The three issues that have been suggested for consideration by this Court on third remand are: (1) whether, in determining "necessary costs" for purposes of § 29, the actual costs incurred by the Fitzgerald Public Schools must be adjusted to reflect the cost at which the state could have provided the subject services if it had elected to provide them directly, (2) whether § 29 is applicable to categorical funding for special education, including special education transportation, and (3) if § 29 applies to special education categorical funds, whether the necessary costs of providing special education programs and services are limited to those costs incurred over and above the costs incurred in providing a regular education program.

In *Schmidt,* the Court held that the state is obligated to afford each district providing a state-mandated activity or service the same percentage of funding that the state provided for that program on a statewide basis in 1978, the year the Headlee Amendment was ratified.[1] In this regard, the Court held that under § 29 it is proper to use a statewide-to-local-district funding ratio for calculating the state's minimum mandatory funding obligation. *Schmidt, supra* at 249-250. This approach requires three separate calculations: one in the base year (1978), one in each of the payout years at issue (1979-1980 and 1984-1985), and one that compares the base year percentage of funding to the payout year percentage of funding. *Id.* at 251, n 22.

The ratio for the base year (1978) is calculated

---

[1] In *Schmidt,* the Court referred to the relationship between the amount of funding provided and the necessary costs as proportional. Throughout this opinion, we will use the terms "proportion" and "percentage" interchangeably in the interest of clarity.

by determining the statewide necessary costs for a mandated activity and comparing it to the aggregate funding that the state provided for that program in the same year. The payout-year ratio is calculated by determining the necessary costs for the mandated program incurred by the local district in the payout year and comparing that figure with the amount of state funding the district received in that year for that program. Finally, the base-year ratio or percentage is compared to the payout-year ratio or percentage to determine whether the state has met its funding obligations in the payout years at issue. *Id.*

### ARE ACTUAL COSTS EQUAL TO NECESSARY COSTS?

When this matter was initially referred to the special master, the parties obviously did not have the benefit of our Supreme Court's holding in *Schmidt.* Nonetheless, the parties entered into an extensive pretrial stipulation covering the admission of exhibits, testimony, and figures representing the actual costs that Fitzgerald Public Schools expended in providing certain mandated services. Plaintiffs now argue that the actual costs to the district in providing the mandated services, as reflected by the stipulation and relevant exhibits, are the equivalent of the "necessary costs" of providing the services for purposes of § 29. In support of this claim, plaintiffs rely on language from our Supreme Court in *Durant v State Bd of Ed,* 424 Mich 364; 381 NW2d 662 (1985), where the Court stated that the "actual cost in the marketplace is also a reliable measure of what must be paid in order for a service or activity to be provided." *Id.* at 391. We reject plaintiffs' argument as a distortion of the Supreme Court's carefully chosen language.

In *Durant,* our Supreme Court agreed with defendants when it held that the term "necessary costs" as used in § 29 refers to those costs that were essential or indispensable to the maintenance of the mandated program. *Id.* In the passage quoted above, our Supreme Court simply suggested that, absent countervailing evidence—whether based on realized costs or theoretical costs—actual costs would be satisfactory as a prima facie indicator of "necessary costs."

In keeping with the voters' intent in the ratification of the Headlee Amendment, once a school district establishes its actual costs, the state may show that, in light of alternate means it might have used to provide the mandated educational program or service, another figure more accurately represents "necessary costs." There may, for example, be various economies of scale that could only be realized by the state and that could result in an overall reduction of costs. Further, the state may be able to demonstrate that an individual school district has been inefficient or imprudent in carrying out a categorical program or that the district expended funds on activities over and above those mandated by the state. Any of these possibilities could result in actual costs in excess of "necessary costs."

Accordingly, this Court's conclusion on second remand that this cause must be remanded to a special master for further fact finding concerning "necessary costs," notwithstanding a stipulation concerning the "actual costs" of the Fitzgerald Public Schools, remains correct. See *Durant (On Second Remand), supra* at 108, 111 (cautioning the special master against summarily equating actual costs with necessary costs). The stipulation in this case established only that the district's audited expenditures were accurate, not that such costs

are equivalent to the "necessary costs" addressed in § 29. Nothing in *Schmidt* changes that holding, and we believe the result to be consistent with our Supreme Court's definition of "necessary costs" articulated in *Durant,* 424 Mich 390-391.

## SPECIAL EDUCATION — STATE OR FEDERALLY MANDATED?

Defendants argue that our Supreme Court's discussion in *Schmidt* regarding the social security issue requires us to conclude that special education is a federally mandated program and, thus, not subject to the requirements of § 29. We disagree.

As a threshold matter, we must continue to focus our attention in this regard on those payout years at issue in this case (1979-1980 and 1984-1985). Were we to revisit this issue today in light of the substantial development of federal law with respect to the education of the handicapped, we might well conclude that the framework of state legislation in this area has been subsumed by federal legislation. See 20 USC 1400 *et seq.* However, we must recall that we are merely reevaluating this case in light of *Schmidt.* In the interest of comity to our colleagues who have addressed this question in the past, and in the interest of finality with respect to this issue, we confine our review to a determination whether *Schmidt* requires that we change the position adopted by this Court in *Durant (On Second Remand). See Durant (On Second Remand), supra* at 101-105.

In *Schmidt,* the plaintiffs (fifty-one school districts and taxpayers from those districts) sought to include within the ambit of § 29, state payments made to the districts to cover social security taxes due the federal government for district employees.

See MCL 388.1746; MSA 15.1919(1046); *Schmidt, supra* at 246. Our Supreme Court held that because social security taxes represent a straightforward tax imposed by the federal government, social security is not a state-mandated function for which the state has any funding obligation under the Headlee Amendment. The Court stated:

> Plaintiffs sought to frame their social security costs claim as though social security coverage constituted a separate state-required activity or service. However, social security coverage is directly imposed by federal law and therefore not required by state law within the meaning of § 29. Second, social security coverage does not constitute an activity or service within the meaning of § 29. Therefore, regardless of the method of calculating the funding ratio, plaintiffs' claim for social security costs is defective. [*Id.* at 262.]

Here, defendants contend that this analysis should apply to special education programs because, like the social security coverage at issue in *Schmidt,* federal law, rather than state law, imposes the mandate to provide special education. We believe that there are significant differences between the social security payments at issue in *Schmidt* and the mandated programs at issue herein.

Defendants are correct that under *Schmidt,* federally mandated programs are not subject to the requirements of § 29. However, this Court has already held on second remand that special education fundamentally is mandated by state rather than federal law:

> When the aforementioned state and federal statutes are read together, it becomes clear that the duties imposed on the state under federal law are of a lesser magnitude than those imposed under Michigan law, and that *special education and*

> *special education transportation are "service[s] re-*
> *quired of units of local government by state law."*
> We reach this conclusion for two reasons. First,
> Michigan law obligates the state to provide a
> higher level of education than does the federal
> law. While the state's provision of programs de-
> signed to maximize the potential of each disabled
> student satisfies the federally imposed obligation
> to provide a basic floor of opportunity, it cannot be
> said that compliance with the lesser federal obliga-
> tion satisfies the more demanding state require-
> ment. Second, the federal legislation confers rights
> and establishes goals and procedures in broad
> general terms. The creation and implementation of
> the programs and related services offered are left
> to the state and local units of government. [*Durant
> (On Second Remand)*, 186 Mich App 104-105; em-
> phasis added.]

Thus, we concluded that because the state require-
ments under MCL 380.1701 *et seq.*; MSA 15.41701
*et seq.*, imposed more stringent and unique re-
quirements on the local districts than were im-
posed under the then-existing federal legislation,
the program was fundamentally state-mandated.

The parties have failed to identify anything in
*Schmidt* that would affect this analysis, and we,
too, find nothing in *Schmidt* that would alter that
portion of our prior opinion. In *Schmidt,* there was
nothing about the state reimbursement system for
social security payments that changed the obliga-
tion of the local district to cover its employees'
social security taxes. Rather, the state simply
funded one hundred percent of the district's obli-
gation under the federal program. In short, there
was nothing unique about the state legislation
that could in any way be construed as imposing
costs upon the district above and beyond those
costs that were attributable to the federal social
security regulations.

In contrast, this Court has held that the unique requirements within the state legislation for special education and related services impose obligations upon the districts that exceed those necessary to fall into compliance with the federal legislation. Unlike the social security program at issue in *Schmidt,* compliance with the special education programs at issue in this case arguably imposed costs upon the local districts that were directly attributable to state, rather than federal, legislation. For these reasons, we reiterate our holding on second remand that for the payout years at issue herein, § 29 applies to special education programs and related services offered by the school district.

### ARE NECESSARY COSTS LIMITED TO INCREMENTAL COSTS?

Finally, defendants claim that "necessary costs," for purposes of special education funding, include only those incremental costs incurred over and above the costs incurred in providing a "regular education" program. Again, we disagree.

As with the previous issue, neither we nor the parties have found anything in *Schmidt* that pertains to this claim. Interestingly, a review of that portion of defendants' brief on third remand concerned with this issue reveals that the analysis is void of any citation to our Supreme Court's opinion in *Schmidt.* Accordingly, defendants' argument in this regard is nothing more than a request for this Court to revisit its previously announced position and conclude that an error was committed. This is a task that we choose not to undertake and, rather, leave the issue to be resolved by our Supreme Court in the event it decides to address the question.

In any event, we are not persuaded that the prior decision of this Court was incorrect. In *Durant (On Second Remand)*, this Court stated:

> Judge Deneweth found that, for purposes of special education funding, necessary costs are those costs incurred over and above or in addition to the costs incurred in providing a regular education program. We disagree with the judge's finding. Were the state to provide special education services itself, it would incur in actual costs more than just those costs over and above the costs incurred in providing a regular education program. [186 Mich App 109.]

This statement appears to be consistent with our Supreme Court's interpretation of the voters' intent when the Headlee Amendment was ratified, which was to "forestall any attempt by the Legislature to shift responsibility for services to the local government, once its revenues were limited by the Headlee Amendment." *Durant,* 424 Mich 379; *Schmidt,* 441 Mich 250.

### INSTRUCTIONS ON REMAND

In the interest of providing the special master with as much guidance as is possible in light of the complicated nature of this litigation, we offer the following instructions. We wish to note that these instructions are in no way intended to limit the special master's discretion in the manner in which to proceed with this litigation. Nor are these instructions intended to limit the parties' options or choices in the manner in which they wish to proceed. Rather, they are intended to serve as a general road map so that the litigation can proceed as quickly and efficiently as possible under the circumstances.

(1) The special master is obligated to determine "necessary costs" in a manner consistent with the definition articulated in *Durant v State Bd of Ed,* 424 Mich 364, 390-391; 381 NW2d 662 (1985), and as ratified in *Schmidt.* The special master may use the actual costs in the marketplace to the extent that they are determined to be an accurate reflection of the "necessary costs." Plaintiffs are free to challenge defendants' necessary-cost figures in the base year, and, likewise, defendants are free to challenge plaintiffs' necessary-cost figures in the payout years at issue. The special master should make specific findings of fact with regard to the necessary costs in each year, including whether they are based upon an analysis of the marketplace or some other evidence.

(2) The special master is obligated to calculate the three ratios described in *Schmidt* and reiterated in the earlier portions of this opinion. The special master should make specific findings with respect to the base-year ratio, the payout-year ratios, and the difference between the two. Should it be determined that the percentage of funding that plaintiffs received in the payout year is lower than the percentage of funding established in the base year, the special master should so state in the findings. The special master, with the cooperation of the parties, should then strive to reduce whatever disparity exists to a dollar figure for each of the years and programs at issue.

(3) The special master is obligated to entertain argument and proofs regarding the necessity of costs incurred by the state in the base year and the district in the payout years. Where appropriate, the parties and the special master may rely upon proofs already developed when the matter was heard before Judge Deneweth. In evaluating plaintiffs' claims, the special master should permit

the parties to amend the existing pretrial stipulation regarding costs incurred by Fitzgerald Public Schools in the payout years and to similarly adjust the financial exhibits. The parties are encouraged, and shall be permitted, to stipulate necessary-cost figures for the base year and the payout years for each of the programs at issue.

(4) The special master's findings of fact and other determinations shall be made within six months of the release of this opinion, or decision on rehearing, if any, or denial of leave to appeal by the Supreme Court, if any, whichever is later. Thereafter, a transcript of such findings shall be transmitted to this Court within twenty-eight days.

Remanded for further proceedings consistent with this opinion and with our opinion on second remand to the extent not modified herein. This Court will issue an order either contemporaneously with or shortly after the release of this opinion, appointing a new special master who shall be responsible for conducting the further proceedings. We retain jurisdiction.