## OAKLAND COUNTY v STATE OF MICHIGAN

Docket Nos. 102331, 102335. Argued January 16, 1997 (Calendar No. 17).
    Decided July 31, 1997.

Oakland County, twenty-four other counties, and Roy Rewold,
    Chairperson of the Oakland County Board of Commissioners,
    brought two separate actions in the Court of Claims against the
    State of Michigan, the Department of Management and Budget, and
    the Department of Social Services, seeking declaratory and mone-
    tary relief under the Headlee Amendment, Const 1963, art 9, § 29,
    for the costs of foster care. The plaintiffs claimed that the child
    care fund amendment of the Social Welfare Act, MCL 400.117a,
    400.117c; MSA 16.490(27a), 16.490(27c), reduced the ratio of state
    financing of county foster care services in violation of the Headlee
    Amendment. The court, James R. Giddings, J., granted the defend-
    ants' motion for summary disposition, holding that the child care
    fund amendment does not violate the Headlee Amendment because
    Headlee applies only to services or activities that state law required
    of local governments when it took effect, and that state law did not
    require the plaintiffs to provide foster care services at that time.
    The Court of Appeals, CORRIGAN and C. D. CORWIN, JJ. (WEAVER, P.J.,
    not participating), affirmed in an unpublished opinion per curiam,
    finding that, although the state required the plaintiffs to provide
    and fund foster care services when the Headlee Amendment took
    effect, the amendment was not violated because it only prohibits a
    reduction in the ratio of state funding of the necessary costs of fos-
    ter care services, and that the expenditures at issue, prima facie,
    were not necessary. It also concluded that the claims were barred
    by the applicable statute of limitation (Docket No. 159938). The
    plaintiffs appeal.

In separate opinions, the justices joined to hold as follows:

I. Justice KELLY, joined by Justices CAVANAGH and BOYLE, and Jus-
tice WEAVER, joined by Justice RILEY, *held*:

The cases are remanded for determination of necessary costs for
the purpose of determining whether there was a Headlee violation.

II. Justice KELLY, joined by Justices CAVANAGH and BOYLE, and
Chief Justice MALLETT, joined by Justice BRICKLEY, *held*:

1. Const 1963, art 9, § 29 applies only to services or activities of local government that the state mandated on its effective date, not to those that were optional. Under § 29, the state may not burden local units of government by improper revenue shifting. Before the effective date of the Headlee Amendment, subsection 55(h) of the Social Welfare Act and § 25 of chapter 12A of the Probate Code required counties to provide and fund foster care. Therefore, the Headlee Amendment is implicated in the provision of county foster care services.

2. Historically, the state and the counties have shared equally the responsibility of funding foster care services. In 1980, subsection 117a(4) was amended to provide that the state would continue to finance fifty percent of the annual expenditures from each county child care fund; however, subsection 117a(4) potentially reduced the percentage that the state reimbursed to counties by allowing the state to limit its reimbursements to a fixed amount and transfer a portion of its costs to the counties. As a consequence, the state is able to lessen its financial burden by paying fifty percent of the projected costs of foster care, rather than fifty percent of actual costs.

3. The Headlee Amendment directs the state to reimburse only the "necessary costs," held to be those essential to maintain a mandated program. In this case, the budgeted costs are not the actual costs, but, rather, estimates of future costs based on previous years' expenses. Further, a cost incurred by a local unit because of a state mandate is not necessary if it is less than a de minimis cost.

Justice KELLY, joined by Justices CAVANAGH and BOYLE, would further hold that the plaintiffs were required by state law to provide and fund county foster care services when the Headlee Amendment took effect. Remand to the Court of Claims is required to determine whether the child care fund amendment reduced the percentage of state financing that existed before the enactment of the Headlee Amendment.

Chief Justice MALLETT, joined by Justice BRICKLEY, concurring in part and dissenting in part, stated that monetary damages are not appropriate in this case; declaratory relief is the only proper remedy.

Unlike the decision in *Durant v State of Michigan*, 456 Mich 175 (1997), in which some monetary relief was awarded because of the defendants' prolonged recalcitrance, the defendants in this case have not demonstrated prolonged recalcitrance. The fact that defendants have won every judicial battle before this one precludes any finding that defendants acted in bad faith.

Justice WEAVER, joined by Justice RILEY, concurring in part and dissenting in part, stated that the facts pleaded regarding state reimbursement of expenditures from the county child care fund do not directly make out a cause of action under Const 1963, art 9, § 29. To plead a cause of action under that part of § 29 prohibiting the state from reducing the state-financed proportion of the necessary costs of any existing activity or service required of units of local government by state law, a plaintiff must plead facts showing that there is a continuing state mandate, that the state actually funded the mandated activity at a certain proportion of necessary costs in the base year of 1978-79, and that the state funding of necessary costs has dipped below that proportion in a succeeding year. Pleading a decrease in the funding requirement of MCL 400.117a; MSA 16.490(27a), did not establish a violation of art 9, § 29 per se. While the defendants may not have complied with their statutory commitment to fund fifty percent of the expenditures in 1978-79, and actual funding may have been below that level, the obligation that is imposed on the state by the Maintenance-of-Support Clause of § 29 begins with whatever level of support was in place when the Headlee Amendment was adopted. However, the factual allegation of reduction in statutory level of funding creates a sufficient inference of actual reduction in funding to allow proceeding on the basis that plaintiffs have alleged actual reduction in state funding.

State law mandates that the county provide and pay for foster care for those children determined by the probate court to be in need of foster care. The duty is maintaining and funding the county foster care system. As long as the activity is mandated by state law and the state contributed financial aid in the Headlee base year, the state has a duty to continue its proportionate support. By ordering foster care services, the probate court does not extend the local duties of a county through a judicial ruling. Under subsection 55(h) the county was already required to provide foster care to as many children as the court designated. Through its orders, the court merely identifies the children in need of foster care and places them in the custody of the county. Therefore, the probate court's order is not an increase in the level of activity or service beyond that required by state law for purposes of MCL 21.232(3); MSA 5.3194(602)(3).

The Court of Appeals held that the plaintiffs did not plead a cause of action because the requirements of a budgeting process resulted in a prima facie reasonable estimate of what costs were necessary. This holding was error, because there are issues of fact concerning whether defendants have not maintained the required level of funding. The factual premise for a cause of action under

§ 29 is a decrease in the actual proportion of funding of the necessary costs of an activity mandated by state law. The plaintiffs allege that the budget amounts do not reflect actual necessary costs, and should be allowed to make such a showing on remand.

Reversed and remanded.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *John M. Donohue*) for the plaintiffs.

*Frank J. Kelley*, Attorney General, and *Thomas L. Casey*, Solicitor General, for the defendants.

Amici Curiae:

*Fink Zausmer, P.C.* (by *David H. Fink* and *Karen Libertiny Ludden*), for Wayne County Chief Executive and Wayne County.

KELLY, J. This Court granted leave to appeal in these consolidated cases to determine whether the defendants' application of certain provisions of 1980 PA 328 violated the Headlee Amendment. Const 1963, art 9, § 29. Act 328 amended the child care fund provisions of the Social Welfare Act. MCL 400.117a and 400.117c; MSA 16.490(27a) and 16.490(27c) (the child care fund amendment).

Plaintiffs are twenty-five Michigan counties and the Chairperson of the Oakland County Board of Commissioners. Defendants are the State of Michigan and its Departments of Management and Budget and Social Services. Certain of the plaintiffs commenced separate actions against defendants, complaining that the child care fund amendment reduced the ratio of state financing of county foster care services in violation of a provision of the Headlee Amendment.[1]

---

[1] On September 1, 1988, Oakland County and Roy Rewold, Chairperson of the Oakland County Board of Commissioners and a taxpayer, filed a

The Court of Claims granted defendants' motion for summary disposition holding, that the child care fund amendment does not violate the Headlee Amendment. It reasoned that Headlee applies only to services or activities that state law required of local governments when Headlee took effect. It found that state law did not require plaintiffs to provide foster care services at that time.

The Court of Appeals affirmed the Court of Claims decision, although it concluded that the state did require plaintiffs to provide and fund foster care services when Headlee took effect. It concluded that the Headlee Amendment was not violated, as it prohibits a reduction only in the ratio at which the state funds the necessary costs of foster care services. It found that the expenditures for which plaintiffs sought reimbursement were prima facie not "necessary." It also concluded that plaintiffs were not entitled to monetary relief because their claims were barred by the applicable statute of limitation.

We agree with the Court of Appeals that plaintiffs were required by state law to provide and fund county foster care services when Headlee took effect. We do not agree that the costs for which plaintiffs seek reimbursement are not prima facie "necessary." Nor do we accept the statutory period of limitation applied by the Court of Appeals. Therefore, we would reverse the decision of the Court of Appeals and would remand these actions to the Court of Claims for further proceedings consistent with this opinion.

complaint in the Court of Claims. They sought declaratory and monetary relief, as well as costs and fees. On May 1, 1989, twenty-four other plaintiffs filed an almost identical complaint. Both complaints were consolidated for hearing on August 14, 1989.

I

Plaintiffs have alleged that the child care fund amendment improperly reduced the state financed proportion of the necessary costs of county foster care services in violation of the Headlee Amendment. As application of the Headlee Amendment to the child care fund amendment is a question of law, the standard of review for this Court is de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

The relevant portion of the Headlee Amendment provides:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of local Government by state law. [Const 1963, art 9, § 29.]

The provision applies only to services or activities of local government that the state mandated on the effective date of Headlee, not to those that were optional. *Livingston Co v Dep't of Management & Budget*, 430 Mich 635; 425 NW2d 65 (1988). Thus, § 29 prevents the state from reducing its share of the funding of programs mandated by prior law. *Id.*, citing *Schmidt v Dep't of Ed*, 441 Mich 236, 252; 490 NW2d 584 (1992).

In an attempt to ascertain the intent of the voters when they enacted § 29, this Court has said:

> Having placed a limit on state spending, it was necessary to keep the state from creating loopholes either by shifting more programs to units of local government without the funds to carry them out, or by reducing the state's proportion of spending for "required" programs in effect at the

time the Headlee Amendment was ratified. [*Livingston Co* at 644.]

Under § 29, the state may not burden local units by improper revenue shifting.

To implement § 29 of the Headlee Amendment, the Legislature enacted 1979 PA 101, now codified as §§ 1 through 14 of the state disbursements to local government units act. MCL 21.231 *et seq.*; MSA 5.3194(601) *et seq.* The purpose of Act 101 was to delineate the "powers and duties of certain state agencies and public officers" responsible for disbursement of state funds to "local units of government for costs required to administer or implement certain activities or services required of local units of government by the state . . . ." Preamble to the act. The purpose of the implementing act is to ensure state compliance with reimbursement procedures.

II

Before enactment of the child care fund amendment, the relevant section of the Social Welfare Act provided:

> The office shall provide for the distribution of money appropriated by the legislature to counties for the foster care of children. The amount distributed to each county shall equal 50% of the annual expenditures from the child care fund of the county established in section 117c, except that expenditures made pursuant to section 117c(3) shall not be included. A distribution shall not be made to a county which does not comply with the requirements of this act. [MCL 400.117a(4); MSA 16.490(27a)(4).]

Since the effective date of the amendment, the section has read:

> The office shall provide for the distribution of money
> appropriated by the legislature to counties for the foster
> care of children. The amount distributed to each county
> shall equal 50% of the annual expenditures from the child
> care fund of the county established in section 117c, *except
> that neither expenditures made pursuant to section
> 117c(3) nor expenditures that exceed the amount of a
> budget approved under section 117c shall be included.* A
> distribution shall not be made to a county which does not
> comply with the requirements of this act. [MCL 400.117a(4);
> MSA 16.490(27a)(4) (emphasis added).]

The plaintiff counties allege that the amendment to
subsection 117a(4) improperly reduced state funding
in violation of the Headlee Amendment.[2]

To plead a cause of action under this part of § 29, a
plaintiff must plead facts showing (1) that there is a
continuing state mandate, (2) that the state actually
funded the mandated activity at a certain proportion[3]
of necessary costs in the base year of 1978-79, and (3)
that the state funding of necessary costs has dipped
below that proportion in a succeeding year.[4] Plaintiffs
first amended complaint and some of their arguments
before this Court suggest that they believe that plead-
ing of a decrease in the funding requirement of § 117a
established, per se, a violation of art 9, § 29. This is
not so. Defendants may not have complied with their
statutory commitment to fund fifty percent of the
expenditures in 1978-79, and actual funding may have

---

[2] The child care fund amendment also added subsections 6 and 7 to
§ 117a and subsection 5 to § 117c.

[3] The actual proportion would not have to be pleaded, but could be
established through discovery or proof at trial.

[4] By using the past tense, we do not mean to imply that an action seek-
ing declaratory judgment would be premature before underfunding has
occurred, so long as there is an actual controversy.

been below that level.[5] The obligation that the maintenance-of-support clause of § 29 imposes on the state begins with whatever level of support was in place when Headlee was adopted.

We reject any implication that plaintiffs have pleaded a violation per se of § 29. However, the factual allegation of reduction in statutory level of funding creates a sufficient inference of actual reduction that we proceed as if plaintiffs alleged actual reduction of state funding.[6]

A

We must first identify the activity or service under consideration. The Court of Appeals construed it as the development, maintenance, participation, and funding of a foster care system pursuant to chapter 12A of the Probate Code. MCL 712A.1 *et seq.*; MSA 27.3178(598.1) *et seq.* and §§ 803(1) and 808-810 of the Revised Judicature Act, MCL 600.803(1), 600.808-600.810; MSA 27A.803(1), 27A.808-27A.810. Defendants ask us to view it more narrowly, as simply the funding of foster care services provided by order of the probate court. Amici curiae Wayne County Chief Executive and the county of Wayne characterize the activity or service at issue as the provision of foster care services under subsection 55(h) of the Social Welfare Act. MCL 400.55(h); MSA 16.455(h).

---

[5] It is by no means uncommon for a succeeding Legislature to decline to appropriate funds at a level promised by a statute adopted by a prior Legislature.

[6] In particular, defendants' briefs do not suggest that defendants have been misled in any way. On remand, plaintiffs should request and the Court of Claims should grant a motion to amend the complaint to conform with this opinion.

We reject the defendants' limited views. We consider the activity or service at issue to extend to the providing of foster care services under subsection 55(h) of the Social Welfare Act as well as their funding under ch 12A, § 25 of the Probate Code.[7] We reach this conclusion because the Probate Code implements the Social Welfare Act provisions regarding foster care services.

Once the activity is identified, the question becomes whether it was in existence and required at the time Headlee became effective. The Court of Appeals determined that, for purposes of the Headlee Amendment, chapter 12 of the Probate Code required counties to develop, maintain, participate in, and fund a foster care system.[8] We agree with the Court of

---

[7] The Headlee implementing act defines an "activity" as "a specific and identifiable administrative action of a local unit of government." MCL 21.232(1); MSA 5.3194(602)(1). It defines a "service" as "a specific and identifiable program of a local unit of government which is available to the general public or is provided for the citizens of the local unit of government." MCL 21.234(1); MSA 5.3194(604)(1). Defendants do not dispute that both the provision and funding of foster care services meet these definitions.

[8] The Court of Appeals in *Oakland Co* stated:

The Juvenile Code [Chapter 12A of the Probate Code], MCL 712A.1 *et seq.*; MSA 27.3178(598.1) *et seq.* establishes Michigan's juvenile justice and foster care system. Counties have no choice whether to participate, individually or as part of a multi-county probate district, in the activities of the Juvenile Division of the Probate Court. To the contrary, RJA § 803(1) mandates that each county that is not part of a probate court district created pursuant to RJA §§ 808 to 810 or previously created pursuant to law shall have at least one judge of probate. RJA §§ 808-810 allow less populous counties to join together to form a probate district, but either as part of a multi-county district or a single county district, each county is required by the Revised Judicature Act to have a probate court. Each probate court is mandated to carry out the functions prescribed, inter alia, in the Juvenile Code, and thus expenses incurred in carrying out the Juvenile Code, when paid upon the order of the Judge of Probate, are "activities or services required

Appeals that state law requires counties to provide
and fund foster care services. However, we believe
that the mandate arises from both subsection 55(h) of
the Social Welfare Act and ch 12A, § 25 of the Probate
Code.

The Social Welfare Act, § 55, requires that the
county administer a public welfare program under the
direction of Children and Youth Services. Subsection
55(h) of the Social Welfare Act specifies:

> The county department shall administer a public welfare
> program, as follows: . . . (h) To investigate, when
> requested by the probate court, matters pertaining to
> dependent, neglected, and delinquent children, and way-
> ward minors, *under the jurisdiction of the probate court to
> provide supervision and foster care as provided by court
> order* . . . . [MCL 400.55(h); MSA 16.455(h) (emphasis
> added).][9]

The phrase "shall administer a public welfare pro-
gram" is mandatory, not permissive. MCL 400.55; MSA
16.455 and MCL 400.55(h); MSA 16.455(h).[10] See

by state law." But for these State statutes, counties would have no
obligation to create and maintain, or participate in, the juvenile jus-
tice and foster care system, and accordingly such activities are
"required by State law" for Headlee Amendment purposes. *Durant
v Dep't of Ed (On Third Remand)*, 203 Mich App 507, 516-517; 513
NW2d 195 (1994). [Unpublished opinion per curiam, issued Febru-
ary 9, 1995 (Docket No. 159938), slip op at 3.]

[9] Therefore, subsection 55(h) existed at the time § 29 of Headlee
became effective. 1951 PA 248.

[10] There is a presumption that "shall" is mandatory.

A necessary corollary to the plain meaning rule is that courts
should give the ordinary and accepted meaning to the mandatory
word "shall" and the permissive word "may" unless to do so would
clearly frustrate legislative intent as evidenced by other statutory
language or by reading the statute as a whole. [*Browder v Int'l
Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982).]

*Kramer v Dearborn Heights*, 197 Mich App 723; 496 NW2d 301 (1992); *Berrien Co v Michigan*, 136 Mich App 772, 784; 357 NW2d 764 (1984) (a statute that states that the county "shall reimburse the state" constitutes a "requirement of state law" for purposes of Const 1963, art 9, § 29). It requires the probate court to identify the children to whom foster care monies must go and places the children in the custody of the county. MCL 712A.1 *et seq.*; MSA 27.3178(598.1) *et seq.* Consequently, counties were required by state law to provide and fund foster care services before enactment of the Headlee Amendment. Therefore, they qualify as existing activities or services required of local units of government.

The Probate Code, ch 12A, § 24 implements § 55 of the Social Welfare Act by providing for placement of a child needing foster care who comes within probate court jurisdiction on a noncriminal matter. MCL 712A.24; MSA 27.3178(598.24). Under § 18 of the Probate Code, the court may enter various orders, including placement in a foster care home, private institution or agency, or commitment to the state as a state ward. See *Wayne Co v Michigan*, 202 Mich App 530, 532, 535; 509 NW2d 853 (1993); MCL 712A.18; MSA 27.3178(598.18). It may retain jurisdiction of the child as a court ward and turn over the child to the Michigan Department of Social Services for care and supervision. MCL 400.115b; MSA 16.490(25b). If the court makes a child a ward of the state, not the county, the county is responsible for paying the state fifty percent of the cost of the child's care. MCL 803.305; MSA

Reading the Social Welfare Act as a whole, we see nothing to suggest that the Legislature intended to make participation on the part of counties voluntary.

25.399(55). Under § 25 of the Probate Code, the county must bear the full burden of its foster care expenditures if it fails to comply with the statutory reimbursement requirements of the Social Welfare Act. MCL 712A.25; MSA 27.3178(598.25).

Thus, the Social Welfare Act outlines the entire child care plan for county foster care services required under subsection 55(h), including the duties of the probate court and the counties. MCL 712A.1 *et seq.*; MSA 27.3178(598.1) *et seq.* of the Probate Code implements the provisions of the Child Care Plan, because the establishment of a probate court is required in order to fulfill the mandate of the Social Welfare Act. MCL 712A.25; MSA 27.3178(598.25). Section 25 of ch 12A of the Probate Code requires counties to fund foster care services, and § 117a allows counties to receive reimbursement from the state for these services. *Wayne Co, supra* at 535-536.

The state asserts that county foster care services are not covered by the Headlee Amendment. It argues that a county may not qualify for reimbursement if it fails to meet certain requirements.

The state is correct in its statement that a county must qualify for reimbursement. Section 117c of the Social Welfare Act makes the county treasurer "the custodian of all money provided for the use of the county department of social services, [and] the juvenile division of the probate court . . . ." MCL 400.117c; MSA 16.490(27c). It provides that the county must maintain a child care fund. One of the purposes of the fund is to pay for foster care services under § 25 of ch 12A of the Probate Code. MCL 400.117c(1), (2); MSA 16.490(27c)(1), (2). Counties are entitled to reimbursement from the state for child care expendi-

tures if they satisfy the conditions for reimbursement prescribed by statute. They include submitting a plan and budget to the Department of Social Services pursuant to § 117a of the Social Welfare Act. The Office of Children and Youth Services is required to withhold funds from any county that does not comply with the § 117a conditions for reimbursement. MCL 400.117c; MSA 16.490(27c).

The focus of the state's position is misplaced. The fact that certain qualifications must be met in order to receive reimbursement does not make the activity or funding "voluntary" for purposes of Headlee. The Headlee Amendment is implicated where an "activity or service" is involuntary. As we earlier concluded, the activity or service is the provision and funding of foster care. The provision of foster care services by counties is neither voluntary nor optional.

Our conclusion is consistent with our reasoning in *State Bd of Ed v Houghton Lake Community Schools*, 430 Mich 658; 425 NW2d 80 (1988). In *Houghton Lake Schools*, we construed a statutory provision, which stated:

> "The minimum number of days of student instruction shall be 180. A district failing to hold 180 days of student instruction shall forfeit 1/180 of its total state school aid for each day of failure." [*Id.* at 667.]

We held that the provision of 180 days instruction was not a required activity for purposes of the Headlee Amendment. *Id.* Headlee was not implicated because the statute anticipated that a local school board may choose to provide fewer days of instruction. It would merely forgo state aid.

As in *Houghton*, a county providing foster care ser-
vices must comply with certain statutory conditions
to receive state reimbursement, see n 7. However,
unlike the schools affected by *Houghton*, a county
may not discontinue foster care services. A county
has one option only with respect to the provision of
foster care services: it may forgo submitting the child
care plan required by § 117c and not receive state
financing under subsection 117a(4). Hence, in accor-
dance with the reasoning of *Houghton*, the submis-
sion of a child care plan is voluntary and is not a
"required activity" for Headlee purposes. However,
the county must provide and fund foster care services
under subsection 55(h) and 712A.24 and 712A.25. The
state concedes this point.

Similarly, we find unpersuasive the state's argument
that county foster care is not a mandated activity
because it is a court requirement.

The definition sections of the Headlee implement-
ing act, properly construed, indicate that the court
requirement exemption refers to the second sentence,
not to the first, of § 29 of the Headlee Amendment.[11]
It is undisputed that it is the first sentence of § 29
that is at issue in this case.

---

[11] The first two sentences of § 29 provide:

The state is hereby prohibited from reducing the state financed
proportion of the necessary costs of any existing activity or service
required of units of Local Government by state law. A new activity
or service or an increase in the level of any activity or service
beyond that required by existing law shall not be required by the
legislature or any state agency of units of Local Government,
unless a state appropriation is made and disbursed to pay the unit
of Local Government for any necessary increased costs. [Const
1963, art 9, § 29.]

Section 4 of the implementing act addresses the language in the second sentence of § 29. MCL 21.234; MSA 5.3194(604). Section 5 outlines the Legislature's responsibility to appropriate monies for "the necessary costs of each state requirement." MCL 21.235; MSA 5.3194(605). Subsection 4(5) defines "state requirement" as "a state law which requires a new activity or service or an increased level of activity or service beyond that required of a local unit of government by an existing law." MCL 21.234(5); MSA 5.3194(604)(5). Subsection 4(5)(c) also exempts a "court requirement" from the definition of a state requirement.[12] MCL 21.234(5)(c); MSA 5.3194(604)(5)(c).

Section 12, on the other hand, addresses the language in the first sentence of § 29. Section 12 provides:

> A state law shall not be enacted, which causes a reduction in the state financed proportion of the necessary costs of an existing activity or service required of local units of government by existing law, unless the existing law requiring an activity or service is repealed. [MCL 21.242; MSA 5.3194(612).]

Subsection 4(3) defines "[s]tate financed proportion of the necessary costs of an existing activity or ser-

---

[12] A "court requirement" is defined as:

> [A] new activity or service or an increase in the level of activity or service beyond that required by existing law which is required of a local unit of government in order to comply with a final state or federal court order arising from the interpretation of the constitution of the United States, the state constitution of 1963, an existing law, or a federal statute, rule, or regulation. [MCL 21.232(3); MSA 5.3194(602)(3).]

vice required of local units of government by existing law" as

> the percentage of necessary costs specifically provided for an activity or service required of local units of government by existing law and financed by the state on December 23, 1978. [MCL 21.234(3); MSA 5.3194(604)(3).]

Significantly, the term "state requirement" does not appear in the text of § 12 of the act. Therefore, the definition of a "state requirement," including the exemption for a court requirement, is not applicable. From that we conclude that the sections of the implementing act that refer to a "state requirement" are useful only in interpreting the second sentence of § 29 of Headlee. The definition is intended to apply, inter alia, to a judicial ruling that increases a local financial burden beyond that required by a statute when Headlee was enacted.

Let us assume, arguendo, that the court requirement exemption could apply to the first sentence in § 29. We are not persuaded that the action taken by the probate court pursuant to §§ 24 and 25 of the Probate Code could constitute a court requirement.

By ordering foster care services, the probate court does not extend the local duties of a county through a judicial ruling. Under subsection 55(h) of the Social Welfare Act the county was already required to provide foster care to as many children as the court designated. Through its orders, the court merely identifies the children in need of foster care and places them in the custody of the county. Therefore, the probate court's order is not *an increased* "level of activity or service *beyond that required* by existing law"

for purposes of MCL 21.232(3); MSA 5.3194(602)(3) (emphasis added).

Before the effective date of the Headlee Amendment, subsection 55(h) of the Social Welfare Act and §§ 24 and 25 of the Probate Code required counties to provide and fund foster care. Therefore, the Headlee Amendment is implicated in the provision of county foster care services.

B

Since county foster care is a required service, we must determine the extent to which the state financed the service before the effective date of the Headlee Amendment. We must decide, as well, whether the child care fund amendment reduced that amount.

Before Headlee, the state reimbursed fifty percent of the annual expenditures from each county child care fund pursuant to subsection 117a(4) of the Social Welfare Act. The fund is the source of financing for county foster care services, subsection 117c(1)(f) of the Social Welfare Act. In 1980, the Legislature amended subsection 117a(4) of the Social Welfare Act. Under the amendment, the state would continue to finance fifty percent of the annual expenditures from each county child care fund. However, it would no longer reimburse expenditures that exceeded the amount budgeted and approved under § 117c. Consequently, the child care fund amendment potentially reduced the percentage that the state reimbursed to counties for their foster care expenditures.

The state contends that § 25 of ch 12A of the Probate Code has always required counties to pay one

hundred percent of their foster care costs. Thus, as the state argues, there was no state financed proportion.[13] We find to the contrary that, historically, the state and the counties have shared equally the responsibility of funding foster care services.

We recognize that § 25 of ch 12A of the Probate Code is the general funding mechanism that governs probate court decisions, including placing a child in foster care. It provides that the expenses incurred in carrying out chapter 12 are to be paid from the general county fund, unless otherwise provided by law. MCL 712A.25; MSA 27.3178(598.25). Subsection 117c(2) of the Social Welfare Act, however, specifically states that "[t]he child care fund shall be used for the costs of providing foster care for children under sections 18c and 117a *and under the jurisdiction of the probate court . . . .*" (Emphasis added.) MCL 400.117c(2); MSA 16.490(27c)(2). Consequently, the source of county foster care funds is "otherwise provided by law" for purposes of § 25 of ch 12A of the Probate Code.

The state contends that its obligation to finance foster care was voluntary because it did not need to reimburse a county that failed to comply with the conditions of reimbursement.[14] We agree that subsec-

---

[13] We note that defendants' assertion is contrary to a 1951 legislative staff report on the history of the evolution of welfare programs in Michigan. The report notes that 1939 PA 280 created the current Social Welfare Act. "State supervision over direct relief was extremely general in spite of the fact that at least 50% of the funds for this purpose [were] to be furnished by the State . . . ." Staff Report No. 24 to the Michigan Joint Legislative Committee on Reorganization of State Government, October, 1951.

[14] The minimum conditions for reimbursement, which applied before the Headlee Amendment and after the child care amendments, are provided in §§ 117a and 117c and the applicable administrative regulations. MCL 400.117a, 400.117c; MSA 16.490(27a), 16.490(27c).

tion 117a(4) of the Social Welfare Act required the state to withhold reimbursement funds from a county that failed to meet the conditions of reimbursement. However, it also required the state to provide reimbursement to counties that met the conditions of reimbursement. Since the percentage that the state reimbursed always equaled fifty percent of the annual expenses for which a county met the conditions of reimbursement, the state's obligation was never voluntary.

The child care fund amendment allows the state to limit its reimbursements to a fixed amount and transfer a portion of its costs of foster care services to the counties. As a consequence, the state lessens its financial burden by paying fifty percent of the projected costs of foster care, rather than fifty percent of actual costs. By that device, the state uses precisely the type of "escape hatch" this Court condemned in *Livingston Co* at 644.

The fact that subsection 117a(4) of the Social Welfare Act required the state to reimburse fifty percent of the county foster care expenses before Headlee satisfies only part of the question. There remains the additional fact that the text of Const 1963, art 9, § 29 directs the state to reimburse only the "necessary costs" of county foster care.

The Headlee implementing act defines a "necessary cost" as "the net cost of an activity or service provided . . . ." MCL 21.233(6); MSA 5.3194(603)(6). The net cost is the actual cost the state would incur if it provided the activity. Also, a cost incurred by a local unit because of a state mandate is not a necessary cost if less than "a *de minimus* cost." A de minimus cost is "a net cost to a local unit of government

resulting from a state requirement which does not
exceed $300.00 per claim." MCL 21.232(4); MSA
5.3194(602)(4).[15]

Consistent with the implementing act, this Court
has stated that "necessary costs" are those essential
to maintain a mandated program. *Durant v State Bd
of Ed*, 424 Mich 364, 391; 381 NW2d 662 (1985)
(*Durant I*).

> Providing only the actual cost to the state, if it provided
> the service, is in keeping with the voters' desire that there
> be no shift of responsibility for services from the state to
> the local governments without adequate compensation.
> Actual cost in the marketplace is also a reliable measure of
> what must be paid in order for a service or activity to be
> provided. [*Id.* at 391.]

In *Durant III*, the Court of Appeals interpreted this
language from *Durant I* to mean that "absent coun-
tervailing evidence—whether based on realized costs
or theoretical costs—actual costs would be satisfac-
tory as a prima facie indicator of 'necessary costs.'"
*Durant v Dep't of Ed (On Third Remand)*, 203 Mich
App 507, 514; 513 NW2d 195 (1994) (*Durant III*).

In *Oakland Co*, the Court of Appeals reasoned:

> [I]t is *prima facie* reasonable for the Legislature to estab-
> lish a presumption that County expenditures for which
> reimbursement from the State is sought but which are not
> budgeted were not necessary, and thus are not eligible for
> mandatory proportionate funding under article 9, § 29.
> [Unpublished opinion per curiam, issued February 9, 1995

---

[15] Thus, the underfunding is the difference between what the state is
now funding and the proportionate amount of necessary costs it funded in
the base year.

(Docket No. 159938), slip op at 4, citing *Durant III* at 513-514.]

However, the Court of Appeals misapplied *Durant III.*

The budgeted costs in the instant case are not the actual costs of a county's foster care services. Rather, the budget, formulated pursuant to § 117c of the Social Welfare Act, is an estimate of future costs based on previous years' expenses. Since the number of children requiring county foster care varies annually, the proposed budget is merely an estimate of what costs a county program will incur the following year. The parties make no assertion that the budgeted amount is the same as a county's actual expenditure for the current fiscal year. Section 117c(5). Therefore, the Court of Appeals reasoning is flawed.

As these cases were decided by summary disposition, the parties did not have an opportunity to develop a record showing the necessary costs of foster care services provided. The parties also were unable to submit proofs showing what claims the counties submitted to the state for foster care service reimbursement. These proofs are needed for a determination of what constitutes a "claim" for purposes of MCL 21.232(4); MSA 5.3194(602)(4). Therefore, on remand, the trial court must decide what costs are necessary county foster care costs, including whether any fall within the de minimus exclusion.

### III

On remand, the lower court will determine if the child care fund amendment reduced the percentage of the state financing that existed before the enactment of Headlee. If a reduction is found to have occurred,

the plaintiff counties are entitled to a proper remedy. We will address briefly the remedy generally appropriate in a § 29 violation case in light of *Durant v Michigan*, 456 Mich 175; 566 NW2d 272 (1997).

This Court's decision in *Durant* is the first to address § 29 Headlee violations remedies. *Id.* at 204. In *Durant*, we noted that declaratory relief is typically the appropriate relief in § 29 actions. We reasoned that violations should be subject to expedited judicial resolution. *Id.* at 205-206. Under *Durant*, future plaintiffs must allege the type and extent of the harm so that the court may determine if a § 29 violation occurred for purposes of making a declaratory judgment. In that way, the state will be aware of the financial adjustment necessary to allow for future compliance.

In *Durant*, we determined that the state's "prolonged recalcitrance . . . necessitates a substantial recovery" under the circumstances of this case. *Id.* at 204. Our implicit reasoning was that much harm had already been done. The imposition of damages served both to remedy some of the past harm and to provide incentive to comply with Headlee in the future.

The resolution of *Durant* was the result of the realization that much of the harm sustained in § 29 Headlee violations cannot be rectified when the resolution is so far remote in time from the violation. The reason is directly related to the nature of the harm involved in Headlee violations.

Thus, we concluded that a creative constitutional experiment such as Headlee was deserving of an equally creative remedy. Anything less would offer no correction of the financial harm. Something more would allow a windfall to the recovering parties. See,

generally, *id.* at 207-208. An important basis for this conclusion was the fact that the assessment of ponderous damages against the state years later would result in taxpayers suffering twice for the state's wrongdoing. If monetary damages were routinely available for § 29 violations, additional taxation may be necessary to fund the damage award. It would adversely affect the efficient balancing of the state's budget, which in turn would negatively affect taxpayers. Thus, we concluded, the remedy should be consistent with the raison d'être of Headlee, which has always been termed a taxpayer revolt. *Id.* at 210.

Consistent with the resolution in *Durant,* an award of damages in instances of prolonged underfunding by the state before the commencement of litigation may also be prudent under limited circumstances.

As for standing, we believe that local units of government have standing to sue on behalf of the public they represent under § 29 of Headlee. *Waterford School Dist v State Bd of Ed,* 98 Mich App 658; 296 NW2d 328 (1980). Furthermore, the reasoning of *Durant* with respect to attorney fees suggests that all entities and persons bringing a claim for relief under § 29 should ordinarily be treated similarly. Accordingly, we conclude here that application of the one-year limitation period found in RJA § 308 to any § 29 case involving monetary relief is appropriate. We express no opinion on whether the Court of Claims has jurisdiction over this claim. The state did not appeal from the determination made below on this issue, but rather conceded the point in its brief.

IV

We reverse the decision of the Court of Appeals. We remand to the Court of Claims to (1) allow plaintiffs to amend their complaints to conform with this opinion; (2) determine whether the child care fund amendment reduced the state reimbursement of necessary costs below the proportion financed during the base year; and, (3) determine what relief is required if a violation of § 29 is found.

CAVANAGH and BOYLE, JJ., concurred with KELLY, J.

MALLETT, C.J. (*concurring in part and dissenting in part*). I join in parts I and II of the lead opinion. I dissent, however, from the lead opinion's determination that this case should be remanded in order to determine if monetary damages are appropriate. In this case, I believe that declaratory relief is the only proper remedy.

In *Durant v Michigan*, 456 Mich 175, 204; 566 NW2d 272 (1997), this Court stated that "monetary relief typically will not be necessary in future § 29 cases." In that case, however, we awarded some monetary relief because of the defendants' "prolonged recalcitrance." *Id.* In *Durant*, despite losses up and down the appellate ladder, defendants consistently refused to properly fund the activities in question. In fact, defendants refused to honor the decision of the Court of Appeals for nearly seven years.

Certainly, we cannot say that defendants have demonstrated "prolonged recalcitrance" in this case. Before today, no court had determined that the child care fund amendment[1] violated the Headlee Amend-

---

[1] 1980 PA 328, MCL 400.117a(4); MSA 16.490(27a)(4).

ment.[2] The fact that defendants have won every judicial battle before this one precludes any finding that defendants acted in bad faith.

Because I would not award monetary damages, I believe that it is unnecessary to determine the appropriate statute of limitation.

BRICKLEY, J., concurred with MALLETT, C.J.

WEAVER, J. (*concurring in part and dissenting in part*). I dissent from part III of the lead opinion for the reasons stated by Chief Justice MALLETT. I concur with the result of part II, but offer the following analysis of the issues:

Plaintiffs' first amended complaint indicates that, in the Headlee base year of 1978-79, MCL 400.117a; MSA 16.490(27a) provided that the state would reimburse fifty percent of the actual expenditures from the county child care fund, but that after the 1980 amendment the state reimbursement was capped at fifty percent of budgeted, not actual, expenditures and that the state required an unrealistically low budgeted amount. While this situation almost certainly would result in underfunding and a violation of § 29, the facts pleaded do not directly make out a cause of action under § 29.

Const 1963, art 9, § 29 provides, in pertinent part:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law . . . .

---

[2] Const 1963, art 9, § 29.

To plead a cause of action under this part of § 29, a plaintiff must plead facts showing (1) that there is a continuing state mandate, (2) that the state actually funded the mandated activity at a certain proportion[1] of necessary costs in the base year of 1978-79, and (3) that the state funding of necessary costs has dipped below that proportion in a succeeding year.[2]

Plaintiffs' first amended complaint and some of their arguments before this Court suggest that they believe that pleading a decrease in the funding requirement of § 117a established, per se, a violation of art 9, § 29. This is not so. Defendants may not have complied with their statutory commitment to fund fifty percent of the expenditures in 1978-79, and actual funding may have been below that level.[3] The obligation that is imposed on the state by the Maintenance-of-Support Clause of § 29 begins with whatever level of support was in place when Headlee was adopted.

While I would reject any implication that plaintiffs have pleaded a violation per se of § 29, the factual allegation of reduction in statutory level of funding creates a sufficient inference of actual reduction in funding that I proceed on the basis that plaintiffs have alleged actual reduction in state funding.

The remaining issue, for purposes of deciding whether plaintiffs alleged a cause of action, focuses

---

[1] The actual proportion would not have to be pleaded, but could be established through discovery or proof at trial.

[2] By using the past tense, I do not mean to imply that an action seeking declaratory judgment would be premature before underfunding has occurred, as long as there is an actual controversy.

[3] It is by no means uncommon for a succeeding Legislature to decline to appropriate funds at a level promised by a statute adopted by a prior Legislature. There is normally no legally enforceable obligation to do so.

on the state-mandated activity. Article 9, § 29 applies to "the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law." The state funding in question supports expenditures from the county child care funds. MCL 400.117a(4); MSA 16.490(27a)(4). Use of that fund is directed by MCL 400.117c(2); MSA 16.490(27c)(2):

> The child care fund shall be used for the costs of providing foster care for children under sections 18c and 117a and under the jurisdiction of the probate court . . . .

Section 18c, MCL 400.18c; MSA 16.418(3), covers foster care "financed by a county department of social welfare . . . ." One of the state-mandated duties of that department is "under the jurisdiction of the probate court to provide supervision and foster care as provided by court order . . . ." MCL 400.55(h); MSA 16.455(h). Section 117a, referred to above, is MCL 400.117a; MSA 16.490(27a), which creates a juvenile justice funding system, including child care funds, for financing juvenile justice services. Subsection 117a(1) defines a juvenile justice service as

> a service, exclusive of judicial functions, provided by a county for juveniles who are within, or are likely to come within, the jurisdiction of the juvenile division of the probate court under section 2 of chapter XIIA of Act No. 288 of the Public Acts of 1939, as amended, being section 712A.2 of the Michigan Compiled Laws . . . . A service includes . . . foster care . . . .

To complete the picture, MCL 712A.25; MSA 27.3178(598.25) provides:

Expenses incurred in carrying out this chapter, except as
may otherwise be specifically provided by law, shall be paid
upon the order of the judge of probate by the county trea-
surer from the general fund of the county.

Thus, state law mandates that the county provide and
pay for foster care for those children determined to
be in need of foster care by the probate court. This is
the state-mandated activity in question.

At times, plaintiffs refer to the state-mandated duty
as maintaining the child care fund. This is an impre-
cise shorthand. The duty is maintaining and funding
the county foster care system.

Defendants argue that the state aid goes to the
county child care fund and that maintaining the fund
is not mandated. Rather, counties only have to main-
tain the fund as a condition of receiving state aid.
Defendants argue that the counties do not have to
accept state aid, so they do not have to maintain the
fund. This mischaracterizes the mandated duty. The
duty is operation and funding of foster care. As long
as the activity is mandated by state law and the state
contributed financial aid in the Headlee base year, the
state has a duty to continue its proportionate support.
See *Durant* v *Michigan*, 456 Mich 175, 198; 566 NW2d
272 (1997).

Similarly, I find unpersuasive the state's argument
that county foster care is not a mandated activity
because it is a court requirement. The Headlee imple-
menting act exempts certain mandates from reim-
bursement. "[C]ourt requirements" are exempted.
MCL 21.234(5)(c); MSA 5.3194(604)(5)(c). A "[c]ourt
requirement" is defined as:

[A] new activity or service or an increase in the level of
activity or service beyond that required by existing law
which is required of a local unit of government in order to
comply with a final state or federal court order arising from
the interpretation of the constitution of the United States,
the state constitution of 1963, an existing law, or a federal
statute, rule, or regulation. [MCL 21.232(3); MSA
5.3194(602)(3).]

The definition is intended to apply, inter alia, to a
judicial ruling that increases a local financial burden
beyond that required by a statute when Headlee was
enacted.

By ordering foster care services, the probate court
does not extend the local duties of a county through
a judicial ruling. Under subsection 55(h) the county
was already required to provide foster care to as
many children as the court designated. Through its
orders, the court merely identifies the children in
need of foster care and places them in the custody of
the county. Therefore, the probate court's order is not
"*an increase* in the level of activity or service *beyond
that required* by . . . state law" for purposes of MCL
21.232(3); MSA 5.3194(602)(3) (emphasis added).[4]

After correctly determining that foster care was a
state-mandated service, the Court of Appeals held
that plaintiffs had not pleaded a cause of action
because the requirements of a budgeting process
resulted in a prima facie reasonable estimate of what
costs were necessary. Because the statute maintained
fifty percent support of those expenditures, the Court
affirmed the Court of Claims grant of summary dispo-
sition in favor of defendants.

---

[4] Defendants also raise an argument claiming an exception to § 29 for
de minimis costs. The issue has played no role in the decisions below.

Plaintiffs argue that the Court of Appeals erred because there are issues of fact concerning whether defendants have not maintained the required level of funding.

I agree with plaintiffs. As noted above, the factual premise for a cause of action under § 29 is a decrease in the actual proportion of funding of the necessary costs of an activity mandated by state law. Plaintiffs allege that the budget amounts do not reflect actual necessary costs. Plaintiffs may make such a showing on remand.

I would vacate the judgment of the Court of Appeals and remand this case to the Court of Appeals[5] for proceedings consistent with this opinion.

RILEY, J., concurred with WEAVER, J.

---

[5] At the Court of Appeals, the parties shall file briefs regarding whether the Court of Claims has subject-matter jurisdiction over an action under Const 1963, art 9, § 29. If the Court of Appeals determines that the Court of Claims does not have jurisdiction, the Court of Appeals shall assume original jurisdiction over the case.