OTTAWA COUNTY v FAMILY INDEPENDENCE AGENCY

Docket No. 251365. Submitted February 1, 2005, at Lansing. Decided
   March 22, 2005, at 9:10 a.m. Leave to appeal sought.

   Ottawa County and other counties brought an action in the Court of
   Claims seeking reimbursement by the Family Independence
   Agency (FIA), now the Department of Human Services, for half
   the cost of juvenile facilities the counties had built. The court,
   William E. Collette, J., granted summary disposition for the FIA.
   The plaintiffs appealed.

      The Court of Appeals *held*:

      1. The trial court correctly determined that, although the FIA
   reimburses fifty percent of a county's expenditures from a special
   child care fund for the operation of a juvenile facility and the
   provision of care services, the FIA need not reimburse a county for
   its substantial capital expenditures like building, equipping, or
   improving juvenile facilities. MCL 45.16 specifically requires a
   county, at its own cost and expense, to provide necessary public
   buildings. Although a county has discretion to spend money from
   its special child care fund, there are conditions for the reimburse-
   ment of those expenditures. For reimbursement by the FIA, MCL
   400.117a(8) requires that the costs be attributable to the indi-
   vidual care of a specific child. Construction of a facility does not
   qualify for reimbursement..

      2. The Headlee Amendment, Const 1963, art 9, § 29, does not
   require the FIA to reimburse fifty percent of the counties' expen-
   ditures at issue. While MCL 712A.16(2) permits a county to
   construct a juvenile detention facility, it does not mandate such
   construction. Thus, in this case, there is no state-mandated local
   governmental activity for which the Headlee Amendment would
   bar any reduction of state financing for the activity.

      Affirmed.

      MURPHY, J., concurring, stated that reimbursement is contin-
   gent on a county complying with the requirements of the Social
   Welfare Act, MCL 400.1 *et seq*. The FIA has dominion over the
   determination whether expenditures will be considered and in-
   cluded in calculating fifty-percent reimbursement. The FIA has

superintending control over the reimbursable portion of a county's child care fund. Absent FIA authorization of expenditures and compliance with the statutory scheme, a county that spends child care fund money on building, equipping, and improving juvenile facilities cannot expect reimbursement.

With respect to the plaintiffs' claim premised on the Headlee Amendment, they were required to plead facts showing that there is a continuing mandate, that the state actually funded the mandated activity in the base year 1978-1979, and that the state funding of necessary costs fell below that proportion in a succeeding year. Although actual costs would be satisfactory as a prima facie indicator of necessary costs, the plaintiffs have failed to present any documentary evidence showing a lack of private, state, or federal facilities that could be utilized for placements relative to providing juvenile justice services, thereby failing to show that construction of their own facilities is a necessary cost for the purposes of boarding juvenile wards. Thus, there is no genuine issue of material fact for trial and the Headlee claim fails.

COUNTIES — JUVENILE CARE FACILITIES — CONSTRUCTION — REIMBURSEMENT BY STATE.

The state is not required to reimburse fifty percent of the cost of a county's building, equipping, or improving a juvenile care facility constructed with special child care funds because state reimbursement requires that the cost be attributable to the individual care of a specific child (MCL 400.117a[8]).

*Silver & Van Essen, P.C.* (by *Douglas W. Van Essen*), for the plaintiffs.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Joel D. McGormley*, Assistant Attorney General, for the defendant.

Before: MARKEY, P.J., and MURPHY and O'CONNELL, JJ.

O'CONNELL, J. Plaintiffs appeal as of right a trial court order granting summary disposition to defendant Family Independence Agency, now the Department of Human Services. We affirm.

INTRODUCTION

Plaintiffs are eleven Michigan counties that seek reimbursement from defendant for fifty percent of the costs they incurred in building, equipping, and improving juvenile detention facilities. According to plaintiffs, these costs might include anything from installing new computers and purchasing new software to constructing a large detention complex from the ground up. The parties agree that defendant currently absorbs fifty percent of a county's general costs to operate a facility and to provide care services, but defendant does not currently reimburse counties for substantial capital expenditures like building, equipping, or improving the facilities. The trial court determined that defendant's limitations on capital expenditures were valid, so it dismissed plaintiffs' claim to recover half their capital expenditures.

ISSUE

The issue in this case is whether the law requires defendant to reimburse a county for half the money the county decides to spend out of its special child care fund to construct, equip, and improve the buildings the county uses to board juveniles. We hold that it does not. Our Constitution only requires the state to reimburse counties for mandated programs, and the counties are not required to build facilities, but may house juveniles in state or private facilities. Therefore, defendant's refusal to reimburse each county's child care fund for construction and other capital costs does not violate the Constitution. Furthermore, our statutes delegate to defendant the authority to determine whether the counties have made a reimbursable expenditure from their child care funds. Nothing in defendant's enabling statute, administrative rules, or policies requires defen-

dant to reimburse the counties for major capital expenditures paid from their child care fund. Therefore, defendant is not required to reimburse counties for their capital expenditures, and the trial court correctly granted defendant's motion for summary disposition.

### DISCUSSION

We begin by acknowledging that MCL 45.16 specifically states that a "county shall, at its own cost and expense, provide . . . necessary public buildings, and keep the same in good repair." Therefore, the counties faced a strong presumption that this statute plainly applies to any juvenile detention facility that they may feel compelled to build. They do not overcome this presumption, but their arguments are worthy of careful analysis.

Counties are required to maintain a foster care system that provides for the care and boarding of juveniles that have fallen under the jurisdiction of a county's probate or family court. MCL 400.55(h); *Oakland Co v Michigan*, 456 Mich 144, 154-155; 566 NW2d 616 (1997) (opinion by KELLY, J.). To implement this mandate, MCL 400.117c(1) requires each plaintiff county to place certain money it receives into a separate child care fund, and MCL 400.117a(2) places the fund under defendant's superintending control. Defendant is also charged with regulating the counties' child care funds through "accounting, reporting, and authorization controls and procedures and child care fund expenditure classifications." MCL 400.117a(3). To provide financial support to counties, defendant "shall provide for the distribution of money appropriated by the legislature to counties . . . as follows: . . . the amount distributed shall equal 50% of the annual expenditures from the child care fund . . . ." MCL 400.117a(4)(a).

From the counties' perspective, then, this case is straightforward. Each county spends money from its child care fund to build and furnish facilities, so the state, through defendant, must reimburse the fund for fifty percent of those expenditures.[1] Defendant argues that MCL 400.117a(3) authorizes it to establish conditions for state reimbursement. The counties respond that defendant may not choose which expenditures to reimburse because the language in MCL 400.117c allows counties to spend fund money on foster care in any way the counties see fit.

Conceding the counties' discretion to spend fund money, we are persuaded that an expenditure's *reimbursement* is, nevertheless, conditional. For example, counties may not receive reimbursement for fund money spent in violation of the Social Welfare Act. MCL 400.117a(4)(a). This blanket restriction includes compliance with rules for staff training and quality of care, MCL 400.18c, as well as myriad other financial and administrative issues. MCL 400.55.

Another condition is found in MCL 400.117a(3), which first charges defendant with the task of regulat-

---

[1] At oral arguments, the counties referred to this relationship as a "partnership," but the concept of a "partnership" has dubious application to plaintiffs' description of their relationship with the state. According to plaintiffs, a county may decide to build a new state-of-the-art facility, as grand as imaginable, and the state must pay half the cost of its construction. The converse, however, is not true. If defendant decides that Ottawa County needs a new facility and decides to build one there, the state must pay for the entire project, and the county freely reaps the incidental benefits. Moreover, any complex built with state-supplemented county funds would belong exclusively to the county, so, theoretically, the county may convert the facilities into a jail or courthouse whenever it chooses, irrespective of the state's interests or objections. Finally, it is undisputed that these facilities raise revenues for counties, yet plaintiffs fail to outline their plan to split those revenues with their state "partner." Simply put, we do not see the inequity in requiring plaintiffs to pay for their own revenue-oriented building projects.

ing fund expenditures and then directs that defendant "shall fund services that conform to the child care rules promulgated under this act." Given the context, the statute also stands for the inverse proposition that defendant need not, and should not, "fund" services that do not conform to its rules. Any confusion regarding the Legislature's meaning of the verb "fund" is dispelled in the first sentence of MCL 400.117a(4), which begins, "The department shall provide for the distribution of money appropriated by the legislature to counties for the cost of juvenile justice services as follows," and then outlines the fifty-percent reimbursement schedule. Therefore, defendant's responsibilities are not limited to replenishing, perfunctorily, half the money that counties spend from their child care funds no matter how tenuously the expenditures relate to foster care. Rather, defendant is obligated to establish standards for reimbursing the funds and may withhold reimbursement if certain expenditures violate its rules.

Our conclusion is solidified by MCL 400.117a(8), which contains another fairly enigmatic limiting provision. It states that defendant must "develop a reporting system providing that reimbursement under subsection (4)(a) *shall be made only* on submission of billings based on care given to a specific, individual child." MCL 400.117a(8) (emphasis added). In accordance with this statute, defendant's predecessor promulgated 1999 AC, R 400.2024(a), which states, "The operating costs of a county-operated facility . . . are restricted to the following expenditures for services and goods necessary to provide direct services to the youth placed in the facility . . . ." The expenses that follow are not related to capital improvements; they pertain to staffing and services. In 1999 AC, R 400.2001, defendant defines a "direct service" as a "service provided to a specific client rather than to a general target group." Defendant's

"published policies and procedures" expand on the idea of "direct services" and severely limit reimbursement for capital expenditures,[2] presumably because large capital expenditures do not provide a "direct service" to an individual youth. Instead, they impermissibly accommodate the "general target group" of all the children a building will board or all the children a new computer system will serve. Under this definition, building and equipping a permanent juvenile facility would never qualify as a "direct service" because the stay of any particular juvenile would be relatively short.

Constructing, furnishing, or improving a building violates the reimbursement condition that a county's costs must be attributable to the individual care of each child. MCL 400.117a(8). It follows that the large capital expenditures at issue also fail to satisfy the extrapolated restriction in Rule 2024 that allows reimbursement for only "direct services." Because the counties fail to demonstrate that the general reimbursement obligation extends to their nonconforming expenditures, they are

---

[2] According to Rule 400.2001(m), " 'Published policies and procedures' means those policies and procedures contained in the office publications entitled 'The Child Care Fund Handbook,' the 'Annual Child Care Fund Plan and Budget Guidelines,' and department manual material." The Child Care Fund Handbook states that defendant will only pay $500 for building maintenance or equipment expenses. Regrettably, defendant failed to adopt the Child Care Fund Handbook as a properly promulgated rule under the Administrative Procedures Act, MCL 24.201 et seq., and defendant does not claim an exemption under MCL 400.6(3) to the rulemaking procedures. Therefore, its failure to adopt the self-proclaimed "policy" as a "rule" limits our ability to apply it. MCL 400.6, 24.207. Nevertheless, for the purposes of this case, it is incumbent upon plaintiffs to demonstrate that defendant has a statutory duty to reimburse the counties for half their capital outlay for facilities. Because defendant has no other rule that requires large-scale capital reimbursement, and because we would not enforce any rule that contradicted a statutory obligation anyway, the issue is largely irrelevant to our analysis of this issue.

responsible for absorbing the large capital costs of building and equipping the facilities, MCL 712A.25, 45.16, and the trial court correctly granted defendant's motion for summary disposition on the counties' statutory claim.

The counties also argue that defendant's failure to reimburse their capital costs violates the Headlee Amendment. Const 1963, art 9, § 29. We disagree. The relevant provision decrees, "The state is hereby prohibited from reducing the state financed portion of the necessary costs of any existing activity or service required of units of Local Government by state law." *Id.* While a statute permits a given county to construct a juvenile detention facility as a county agency, MCL 712A.16(2), the statute does not state that each county must build a facility. Rather, it is incumbent upon the state to determine the juvenile housing needs of the various counties and build facilities accordingly. MCL 400.115d. Each county has the alternative of detaining juveniles in private, state, or county facilities. MCL 712A.18; *Oakland Co, supra* at 155 (opinion by KELLY, J.). The counties fail to plead a lack of private, state, or federal facilities that might render the construction of their own facilities a cost "necessary" to fulfill their statutory obligation to arrange boarding for juvenile wards. Therefore, because the costs associated with the counties constructing and equipping their own facilities are not necessary to fulfill the counties' statutory obligations, the Headlee Amendment does not require defendant to reimburse half the counties' capital outlay for these discretionary expenditures.[3]

---

[3] We also note that plaintiffs failed to raise a genuine issue of material fact regarding the state's payment of these costs in the base fiscal year of 1978-1979. *Oakland Co, supra* at 151 (opinion by KELLY, J.). The overwhelming evidence was that defendant (and its predecessors) always excluded large capital expenditures from the child care funds, and the

As we stated at the outset, MCL 45.16 plainly requires a county to pay for its own buildings with its own money. Holding otherwise would undermine the Legislature's goal of encouraging counties to provide focused care for each child. It would twist the statutory design into an unbudgeted and unaccountable state subsidy that provides unlimited matching funds for any purchase that a county decides its juveniles might use. Neither the law nor sound policy persuades us, let alone compels us, to adopt plaintiffs' position. On the contrary, the law plainly expresses the Legislature's intent that counties bear the cost for this class of expenditures. Therefore, defendant properly withheld reimbursement for the nonconforming expenditures, and the trial court correctly granted defendant's motion for summary disposition.

Affirmed.

MARKEY, P.J., concurred.

MURPHY, J. (*concurring*). I concur with the majority that the trial court correctly granted defendant's motion for summary disposition. I write separately to voice a slightly different approach and analysis than that utilized by the majority.

I glean the following from MCL 400.117a and MCL 400.117c. As a starting point, and without yet considering any statutory conditions and the Headlee Amendment, Const 1963, art 9, § 29, a county is entitled to fifty-percent reimbursement by the Family Indepen-

___

scant evidence of exceptions consisted of self-contradictory forms (filled out by individuals who requested reimbursement for capital outlays despite boilerplate language disallowing them) and a list of expenses apparently assembled as part of a state inquiry and not as a reimbursement request. Because the state did not fund capital expenditures in the base year, it is not required to fund them now.

dence Agency (FIA), now the Department of Human Services, of annual "juvenile justice service"[1] expenditures paid from the county's child care fund established under § 117c. MCL 400.117a(4)(a). If, however, a county does not comply with the requirements of the Social Welfare Act, MCL 400.1 *et seq.*, the FIA cannot make a distribution. MCL 400.117a(4)(a). Further, any reimbursement made by the FIA must be predicated on the submission of billings relative to the "care given to a specific, individual child." MCL 400.a(8). Moreover, if the expenditures exceed the amount approved by the FIA in a county's budget under § 117c, the excessive expenditures shall not be subject to fifty-percent reimbursement by the state. MCL 400.117a(4)(a).[2] The FIA cannot approve budgets that exceed the Legislature's appropriations. MCL 400.117c(5). The FIA exercises superintending control over child care funds, and, within the statutory framework, it must promulgate rules to monitor money for juvenile justice services, promulgate rules to prescribe fund accounting, reporting, and authorization controls and procedures and fund expenditure classifications, and establish guidelines for developing juvenile justice service plans. MCL 400.117a(2),(3), and (6). "For counties required to have a child care fund, the department shall fund services that conform to the child care rules promulgated under this act." MCL 400.117a(3).

---

[1] " 'Juvenile justice service' " means a service, exclusive of judicial functions, provided by a county for juveniles who are within or likely to come within the court's jurisdiction . . . . A service includes intake, detention, detention alternatives, probation, foster care, diagnostic evaluation and treatment, shelter care, or any other service approved by the office . . . ." MCL 400.117a(1)(c).

[2] MCL 400.117c(5) also provides that "[f]unds shall not be distributed under section 117a except for reimbursement of expenditures made under an approved plan or budget."

To reduce it to a simple proposition, the FIA is required to reimburse fifty percent of county expenditures for juvenile justice services; however, through promulgated authorization controls, the authority to approve budgets, and the power of superintending control, the FIA effectively has dominion over the determination whether expenditures will be considered and included in calculating the fifty-percent reimbursement mandate. Of course, other statutory conditions also guide the determination in regard to reimbursement. If a county decides to expend child care fund money on building, equipping, and improving juvenile detention facilities, or on any other matter, it cannot expect reimbursement absent authorization and approval by the FIA of the expenditures and compliance with the statutory scheme. As the majority states, reimbursement is conditional. This is reflected in *Oakland Co v Michigan,* 456 Mich 144, 156-157; 566 NW2d 616 (1997) (opinion by KELLY, J.), in which our Supreme Court, making clear that a county is not necessarily entitled to reimbursement of every expenditure from the child care fund, stated:

> The state is correct in its statement that a county must qualify for reimbursement. . . . One of the purposes of the fund is to pay for foster care services under § 25 of ch 12A of the Probate Code. Counties are entitled to reimbursement from the state for child care expenditures if they satisfy the conditions for reimbursement prescribed by statute. They include submitting a plan and budget . . . . The [office] is required to withhold funds from any county that does not comply with the § 117a conditions for reimbursement. [Citations omitted.]

Here, provisions of the Child Care Fund Handbook indicate that the unit cost of purchasing property and equipment, in general, and the cost of leasing property and buildings will only be reimbursed if the cost is less

than $500. Aside from the problem that the handbook was not properly promulgated as a rule as required by § 117a(3), the relevant language of the handbook, as drafted, conflicts with the dictates of § 117a(4)(a) that the FIA reimburse fifty percent of the counties' expenditures. The language of the handbook suggests that the FIA can limit reimbursement to $499 or less *while implicitly or expressly approving of the county's expenditure,* and otherwise assuming compliance with the law, even if fifty percent of the expenditure is $500 or more. Read in this manner, the language is not a condition for reimbursement, but rather a limit on the extent of the reimbursement for an approved expenditure. In my opinion, this is not permitted by § 117a. However, the problem is more a matter of semantics than substance. Because of the FIA's authorization and approval authority relative to budgets and expenditures, the FIA would be within its purview to state that any expenditure for the purchase of property or equipment shall not be approved or authorized in an amount of $500 or more, while approving expenditures of $499 or less. Here, there is no indication that the FIA knowingly approved of the expenditures at issue when reviewing and approving budgets or in reimbursing counties pursuant to the counties' monthly submission of FIA-207 forms that outlined expenditures for which reimbursement was sought. To the contrary, the FIA clearly indicated that the expenditures relevant to this action were not allowed or approved and will not be approved.

For the most part, plaintiffs conceded at oral argument that the FIA has the authority to deny approval of a proposed expenditure, such as the kind in dispute here, that is contained in a budget or presented through some other request mechanism. I do not accept plaintiffs' attempt to delineate between this preexpenditure

authority and the authority of the FIA to deny reimbursing an expenditure after it has been made, where the expenditure was never approved. The bottom line is that the FIA did not approve the expenditures at issue. As noted by plaintiffs, the troublesome aspect of § 117a is that the FIA could conceivably deny budgetary approval of clearly legitimate expenditures, thereby decreasing its obligations to reimburse the counties at fifty percent of the expenditures. The FIA acknowledges this point, but refers us to the protections against such activity found in the Headlee Amendment. This position does not, however, contemplate required services that may arise post-Headlee. Regardless, because there is no clear legislative direction indicating that the building, equipping, and improving of juvenile detention facilities are reimbursable expenditures, and some language suggesting the contrary, and because there is no evidence of an absolute need to construct detention facilities, I see no need for further exploration of the matter.

With respect to the plaintiffs' claim premised on the Headlee Amendment, they were required to "plead facts showing (1) that there is a continuing state mandate, (2) that the state actually funded the mandated activity at a certain proportion of necessary costs in the base year of 1978-79, and (3) that the state funding of necessary costs has dipped below that proportion in a succeeding year." *Oakland Co, supra* at 151 (opinion by KELLY, J.). Although actual costs would be satisfactory as a prima facie indicator of necessary costs, the counties have failed to present any documentary evidence showing a lack of private, state, or federal facilities that could be utilized for placements relative to providing juvenile justice services, thereby failing to show that construction of their own facilities is a "necessary" cost for the purposes of boarding juvenile

wards. See *id.* at 164-165. There is no genuine issue of material fact for trial. Accordingly, the Headlee claim fails.

I concur with the majority's ruling to affirm.