# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CM and AM, Minors.

FOR PUBLICATION
April 7, 2016
9:00 a.m.

No. 322913
Mackinac Circuit Court
Family Division
LC No. 2012-006082-NA

Before: BOONSTRA, P.J., and WILDER and METER, JJ.

BOONSTRA, P.J.

This case returns to this Court on remand from our Supreme Court.[1] At issue is the trial court's determination that the Mackinac County Child Care Fund (MCCCF) was not responsible for the payment of any cost or administrative rate connected with supervision of foster care placements. We conclude that, because no statute specifically provides the MCCCF with any such insulation for the timeframe in question, the court erred in so concluding, and accordingly reverse the trial court and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from child protection proceedings dating from December 2012. Upon concluding that extensive efforts to reunify the family were unsuccessful, petitioner, the predecessor of appellant the Department of Health and Human Services,[2] filed in December 2014 a supplemental petition requesting termination of both parents' parental rights to the two subject minor children. The trial court terminated both parents' parental rights in April 2015. In consolidated appeals, this Court affirmed both terminations.[3]

---

[1] *In re CM and AM,* 498 Mich 900; 870 NW2d 916 (2015).

[2] See Executive Order No. 2015-4. For convenience, in this opinion the term "petitioner" will refer collectively to the DHHS and its pertinent predecessors.

[3] *In re McMillan,* unpublished opinion per curiam of the Court of Appeals, issued March 15, 2016 (Docket Nos. 327556 & 327557).

In the course of earlier proceedings, however, the trial court included within a July 2014 dispositional order, after raising the issue sua sponte, the following provision concerning the costs of supervising foster care:

> The Court finds no legal authority for the Mackinac County Child Care Fund to pay administrative rates charged in addition to out-of-home placement costs. THEREFORE, IT IS ORDERED the Mackinac County Child Care Fund shall not pay any further administrative rates charged over and above out-of-home placement costs.

Petitioner asserts that it thereafter absorbed all such costs itself.

Petitioner sought interlocutory relief in this Court, which application this Court denied in an unpublished order entered November 3, 2014.[4] Petitioner then sought leave to appeal in the Supreme Court, which, in lieu of granting leave, remanded the case to this Court "for consideration as on leave granted." *In re CM and AM*, 498 Mich 900; 870 NW2d 916 (2015).

Petitioner argues that the trial court erred in declaring that the MCCCF bore no responsibility for payment of the administrative rates associated with the supervision of foster care placements. Although intervenor the Sault Sainte Marie Tribe of Chippewa Indians has filed no brief on appeal, the Tribe concurred in petitioner's application for leave to appeal in this Court. Defending the decision at issue both below and on appeal is respondent-mother.

We note that, of the advocates in this appeal, only petitioner has a greater than incidental interest in the outcome of it. The Sault Sainte Marie Tribe participates in foster care only at petitioner's discretion, and its entitlement to compensation for supervision services does not depend on the source of funding. Respondent-mother in turn had no direct role in the management of her children's foster care placements, and even her incidental interest concerning sources of funding for any such services was rendered entirely moot with the termination of her parental rights. Nonetheless, we read our Supreme Court's remand order as calling for a decision on the merits regardless of any such procedural concerns. In so deciding, we treat respondent-mother and the Sault Sainte Marie Tribe as participating in this appeal in the manner of amici curiae.

## II. FUNDING OF FOSTER CARE SUPERVISION

A court having jurisdiction over a child on a noncriminal matter may order various placements for the child, including "placement in a foster care home, private institution or agency, or commitment to the state as a state ward," and may also retain jurisdiction of the child as court ward and turn over the child to [petitioner] for care and supervision." *Oakland Co v Michigan*, 456 Mich 144, 155 (KELLY, J., joined by CAVANAGH and BOYLE, JJ.), 168 (MALLETT, C.J., joined by BRICKLEY, J., concurring in pertinent part); 566 NW2d 616 (1997), citing

---

[4] *In re CM and AM,* unpublished order of the Court of Appeals, entered November 3, 2014 (Docket No. 322913).

MCL 712A.18 and MCL 400.115b. "If the court makes a child a ward of the state, not the county, the county is responsible for paying the state fifty percent of the cost of the child's care." *Id.*, citing MCL 803.305.

The parties agree that, under the circumstances of this case, responsibility for the costs of the subject children's foster-care placements was properly shared between petitioner and the county. At issue is whether the latter thus bears responsibility for half of the supervision costs related to petitioner's having engaged the Sault Sainte Marie Tribe's child welfare agency to supervise the children's foster-care placements. Several statutory provisions, respectively from the juvenile code, MCL 712A.1 *et seq.*, the Social Welfare Act, MCL 400.1 *et seq.*, and the Youth Rehabilitation Services Act, MCL 803.301 *et seq.*, bear on the question.

## A.  STATUTORY FRAMEWORK AND HISTORY

Under MCL 712A.25(1), "Except as otherwise provided by law, expenses incurred in carrying out this chapter shall be paid upon the court's order by the county treasurer from the county's general fund." MCL 400.117c(1) designates "[t]he county treasurer" as "the custodian of all money provided for the use of the county [division of the petitioning] agency [or] the family division of circuit court," and calls for the county treasurer to "create and maintain a child care fund." Subsection (2) directs that "[t]he child care fund shall be used for the costs of providing foster care for children . . . under the jurisdiction of the family division of circuit court or court of general criminal jurisdiction."

MCL 803.305(1) in turn states that, but for exceptions not at issue here, "the county from which the public ward is committed is liable to the state for 50% of the cost of his or her care . . . ." MCL 400.115a(1)(a) calls for "uniform statewide daily rates for the care of children," and states that "[i]n the case of children receiving service by or through child caring agencies . . . the daily rates may include an average daily rate for agency supervision."

Respondent-mother asserts that the issue of financial responsibility for daily rates covering agency supervision "quietly surfaced" by way of the appropriations bill[5] passed as Public Act No. 190 of 2010. See 2010 PA 190. According to respondent-mother, this appropriations legislation rendered petitioner "responsible for administrative fees charged by private agencies," and "did not shift these costs to the counties." Respondent-mother continues, "however in subsequent years the language requiring [petitioner] to pay these costs was dropped from the appropriations bills and [petitioner] began shifting these costs to the counties." Respondent-mother does not specify the part or parts of 2010 PA 190 that she alleges engendered this issue, but we note that § 546(1) stated, "From the money appropriated . . . for foster care payments and from child care fund, the department shall pay providers of foster care

---

[5] Appropriations bills, as they deal with the yearly apportionment of funds, generally do not enact or amend statutory provisions. They thus do not become part of the positive law of the state of Michigan. See *Woodman v Kera LLC*, 486 Mich 228, 252; 785 NW2d 1 (2010) (referring to positive law as that enacted by the Legislature). 2010 PA 190 did not amend or create any statutory provisions.

services not less than a $37.00 administrative rate," and § 589 directed that, "[f]rom the money appropriated . . . to facilitate the transfer of foster care cases currently under department supervision from department supervision to private child placing agency supervision, the department shall not transfer any foster care cases that require a county contribution to the private agency administrative rate."

Petitioner, on the other hand, asserts that payment from county childcare funds of the costs of supervising foster-care placements "began long before the Legislature began to specify the administrative rate in appropriations boilerplate," and offers a reproduction of a 1972 departmental letter from petitioner advising office and field staff that "[i]n addition to the actual board and care rate, bills for the agency's administrative costs . . . are to be submitted to the county department for payment processing." Petitioner also cites appropriations dating back to 2007 PA 131, § 546 of which set forth various rates "the department" was obliged to pay providers of foster-care services from "the money appropriated . . . for foster care payments . . . and from child care fund." Section 731 in turn set forth as a condition for receiving the appropriation for the childcare line items that "the department . . . not charge any county for expenses related to the payment of an administrative rate to private child placing agencies that oversee neglect and abuse wards if these same administrative costs are not charged in a uniform manner to all counties in this state." Section 731 thus relieved counties of sharing in responsibility for administrative rates not charged in a uniform manner across the state, while impliedly leaving that burden in place otherwise. The provision did not purport to amend the provision for the equal sharing of financial responsibility in MCL 803.305(1), but rather conditioned any such charges in connection with present appropriations on uniformity among the counties.

We do not read these provisions as assigning petitioner sole responsibility paying for administrative fees. Although § 546(1) directed petitioner to pay the administrative rates, it authorized that entity to do so from appropriations for foster-care payments and also from a "child care fund," thus implicating the special funds that county treasurers are obliged to create and maintain under MCL 400.117c. And § 589 did not amend the equal sharing of financial responsibility set forth in MCL 803.305(1), but rather prohibited petitioner from spending the funds appropriated by the bill on transferring cases in a way that would force a county to bear a private agency administrative rate. Further, in providing that petitioner not burden the county with a private county administrative rate by transferring certain cases to private agencies, § 589 impliedly recognized the presence of such a burden in other situations.

In this case, the trial court noted that legislation pending at the time would put all of the responsibility for paying administrative rates to private agencies for foster care supervision services upon petitioner, and suggested that the result of the Legislature's earlier silence on the matter was that "there isn't any legal authority . . . for the County Child Care Fund to be paying an additional Administrative Rate." The Court thus suggested that counties never shared in statutory responsibility over such matters where petitioner has chosen "to use . . . private agency providers in certain situations." We disagree, and hold that, except where the Legislature has specifically indicated otherwise, customary administrative charges for private agencies contracted to provide supervision of foster care placements should not be separated from other customary costs of foster care when determining responsibility for covering those costs.

Petitioner argues that 2014 PA 304, which became effective after the order here appealed from (and which presumably is the legislation the trial court referenced as then pending), makes petitioner solely responsible for paying the administrative rates in question, thereby effecting a change from the then-applicable even split between petitioner and the counties. See *Edgewood Dev, Inc v Landskroener*, 262 Mich App 162, 167-167; 684 NW2d 387 (2004) ("A change in the statutory language is presumed to reflect a change in the meaning of the statute."). We agree.

MCL 400.117a was silent on petitioner's share of responsibility for administrative rates until 2013 PA 138, which, as was reflected in MCL 400.117a(4)(c) at the time the July 2014 order at issue was entered, assigned to "the department" sole responsibility for a three-dollar increase in the "administrative rate for providers of foster care services." Specifically, MCL 400.117a(4)(c), as added by 2013 PA 138, stated, "for the fiscal year ending September 30, 2014, the department shall pay 100% of the costs of the $3.00 increase to the administrative rate for providers of foster care services" set forth in recent appropriations. This is the sole statutory provision addressing the department's share of responsibility for administrative rates for foster-care services. In singling out the *increase* as the part of the administrative rate for which petitioner was to be exclusively responsible, the Legislature indicated that it was operating with the understanding that the administrative rates were otherwise subject to the standard apportionment of financial responsibility, the even split between petitioner and pertinent county set forth in MCL 803.305(1).

This was followed by the dictate of 2014 PA 304 that "the department" bore sole responsibility for administrative rates in connection with "foster care cases established after October 1, 2013." Specifically, 2014 PA 304, which became effective on October 9, 2014 (i.e., after the order at issue was entered), more broadly provided that "for the fiscal years ending September 30, 2014 and September 30, 2015, for foster care cases established after October 1, 2013, the department shall pay 100% of the administrative rate for providers of . . . foster care services" as set forth in recent appropriations. MCL 400.117a(4)(d).[6]

The positive statutory law constituting MCL 400.117a, then, was silent on petitioner's share of responsibility for specifically the administrative rates until 2013 PA 138, which, as reflected in MCL 400.117a(4)(c) at the time the order appealed from was entered, assigned to "the department" sole responsibility for a three-dollar increase in the "administrative rate for providers of foster care services." This was followed by the dictate of 2014 PA 304 that "the department" bore sole responsibility for administrative rates in connection with "for foster care cases established after October 1, 2013."

Because administrative rates covering foster-care supervision services have long been acknowledged as part of what foster care entails, and the Legislature has assigned sole responsibility for them to the pertinent state agency only for distinct periods, we conclude that the trial court erred in determining that the MCCCF bore no responsibility under

---

[6] The current MCL 400.117a(4)(d), as amended by 2015 PA 81, differs from its immediate predecessors mainly in extending petitioner's sole responsibility for administrative rates until September 30, 2016.

MCL 803.305(1) for paying administrative rates in connection with supervision of foster-care placements in the absence of legislation specifically providing otherwise for the timeframe in question.

We therefore reverse the trial court's July 2014 dispositional order in pertinent part, and remand this case the trial court for further proceedings. We do not retain jurisdiction.[7]

/s/ Mark T. Boonstra
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter

---

[7] We note, contrary to respondent-mother's argument, that our holding that petitioner may recoup 50% of the costs of certain administrative fees does not reduce the state financed proportion of the necessary costs of an existing activity or service by imposing a new cost on county child care funds; rather, it acknowledges that the responsibility to share certain fees existed under long-established statutes until the Legislature removed this responsibility. See MCL 803.305(1); MCL 400.117a. Thus, our holding (and petitioner's recoupment of costs) does not violate the Headlee Amendment, Const 1963, art 9, § 29. Further, our Supreme Court and this Court have generally recognized the 50% apportionment of responsibility for necessary foster care fees as not violative of the Headlee Amendment. See *Oakland Co v Michigan*, 456 Mich 144, 161; 566 NW2d 616 (1997); *Ottawa Co v FIA*, 265 Mich App 496, 499; 695 NW2d 562 (2005).