*495 Markman, J.
(dissenting). I respectfully dissent from the majority’s conclusion that plaintiff school districts are entitled to a declaratory judgment holding that the recordkeeping requirements of MCL 388.1752 and Executive Order No. 2000-9 violate the prohibition of unfunded mandates (POUM) provision of Const 1963, art 9, § 29. I dissent because the majority has erroneously interpreted the burden of proof necessary to establish a violation of the POUM provision. The majority errs by holding that a POUM plaintiff need only show a new or increased level of activity for which there is no funding. It further errs by stating that if a plaintiff makes such a showing, the plaintiff is entitled to prevail unless the state proves that costs were not increased or that such increased costs were not “necessary.” Finally, the majority errs by holding that a POUM plaintiff need not submit proof of specific costs. As explained hereafter, the burden of proof remains on a POUM plaintiff at all times and requires the plaintiff to prove with specificity an increase in necessary projected or actual costs.
I would reverse the judgment of the Court of Appeals and remand for entry of summary disposition for defendants on the ground that plaintiffs failed to establish a POUM violation because they failed to submit proof of specific “necessary increased costs” through the reallocation of funds or out-of-pocket expenses required by the new recordkeeping requirements.[1] There are significant practical consequences to the majority’s interpretation that over time will trans *496 form the Headlee Amendment from a provision limiting public expenditures into a provision facilitating such expenditures.
I. FACTS AND HISTORY
Plaintiffs are 456 local Michigan school districts in their corporate capacity, together with one individual taxpayer from each district. This appeal is the culmination of plaintiffs’ Headlee Amendment claim that the state has imposed new data collection and reporting requirements on local school districts without providing the necessary funding for the increased costs of those mandates.[2] Plaintiffs filed an original declaratory judgment action in the Court of Appeals on November 15, 2000, alleging 21 separate violations of the Headlee Amendment, specifically Const 1963, art 9, § 29, which, in its second sentence, contains a prohibition of unfunded mandates.[3] This Court eventually determined that only one of plaintiffs’ claimed violations was potentially viable, and we remanded the case to the Court of Appeals, directing it to reevaluate plaintiffs’ recordkeeping claim under Const 1963, art 9, § 29. Adair v Michigan, 470 Mich 105; 680 NW2d 386 (2004); Adair v Michigan, 474 Mich 1073 (2006).
The Court of Appeals subsequently appointed a special master who heard testimony in 2007, some five years after the recordkeeping requirements took *497 effect. The special master determined that plaintiffs had proved their POUM claim — even though she also determined that plaintiffs had adduced “little evidence of local districts or [intermediate school districts] incurring actual additional costs or expenditures as a result” of these requirements. The Court of Appeals adopted most of the special master’s factual findings and conclusions of law and entered a declaratory judgment in favor of plaintiffs. Adair v Michigan (On Second Remand), 279 Mich App 507; 760 NW2d 544 (2008). In particular, the Court of Appeals held that to demonstrate a POUM violation, plaintiffs only needed to establish
(1) an increase in the level of activity or services mándated by the state and (2) a complete failure on the part of the state to provide any funding to offset the necessary costs to be incurred by the districts in the provision of the increased level of services or activities. [Id. at 515.]
Defendants appealed in this Court, arguing that plaintiffs had not proved the specific dollar amount of any actual costs or expenses resulting from the recordkeeping requirements and that the Court of Appeals had erred by concluding that a plaintiff need not demonstrate particularized increased costs in order to sustain a POUM claim. We granted leave to appeal, asking the parties to brief “whether the prohibition of unfunded mandates in Const 1963, art 9, § 29, requires the plaintiffs to prove specific costs, either through the reallocation of funds or out-of-pocket expenses, in order to establish their entitlement to a declaratory judgment. . . .” Adair v Michigan, 483 Mich 922 (2009).
II. HEADLEE AMENDMENT
The Headlee Amendment is an initiative passed by Michigan voters in 1978. The first sentence of Const 1963, art 9, § 29 states:
*498 The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law.
The second sentence of Const 1963, art 9, § 29 adds:
A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs.
The first sentence addresses existing services or activities required of local units of government, and the second sentence addresses future services or activities. Claims under the first sentence are known as “maintenance of support” or “MOS” claims. Claims under the second sentence are known as “prohibition of unfunded mandates” or “POUM” claims. This appeal involves only a POUM claim. Under the language of the second sentence, a POUM plaintiff must show “increased costs” that are “necessary” to fulfill a state mandate for a new or increased activity or service.[4] Thus, in the case at bar, one must assess (1) whether the recordkeeping requirements resulted in increased costs to plaintiff school districts and, if so, (2) whether the incurrence of these costs was necessary to comply with the recordkeeping requirements.
III. HEADLEE STATUTE
The Headlee implementing act, 1979 PA 101, MCL 21.231 et seq., defines “necessary cost” as “the net cost *499 of an activity or service provided” and “net cost” as “the actual cost to the state if the state were to provide the activity or service mandated as a state requirement ...MCL 21.233(6).[5] The Headlee implementing act also provides that a necessary cost does not include a cost that does not exceed a de minimis amount, which is defined as a cost that does not exceed $300 a claim. MCL 21.233(6)(c); MCL 21.232(4).[6] Therefore, considering the Headlee implementing act in evaluating whether plaintiff school districts’ additional costs were necessary, the relevant question is whether there would be an increase in the actual cost to the state if it were to provide the activity or service itself. Also, a cost incurred by a local unit of government because of a state mandate does not become a necessary cost if it is de minimis.
*500 IV ANALYSIS
A. MOS VERSUS POUM CLAIMS
This Court held in Durant v State Bd of Ed, 424 Mich 364, 379; 381 NW2d 662 (1985), and Oakland Co v Michigan, 456 Mich 144; 566 NW2d 616 (1997), that a plaintiff bringing a claim under the MOS provision must demonstrate the actual costs of the mandated services. However, following the lead of the Court of Appeals, the majority holds here that POUM plaintiffs, in contrast with MOS plaintiffs, need not demonstrate either projected or actual costs. The majority’s only explanation for why POUM plaintiffs should have a lower burden of proof comes in its assertion that the two sentences of Const 1963, art 9, § 29 address different situations and, therefore, that a different analysis applies to each.
I disagree. In Durant, 424 Mich at 379, we explained that the two sentences of Const 1963, art 9, § 29 must be read together “[bjecause they were aimed at alleviation of two possible manifestations of the same voter concern....” We specifically reiterated this point in Schmidt v Dep’t of Ed, 441 Mich 236, 250-251; 490 NW2d 584 (1992), and Judicial Attorneys Ass ’n v Michigan, 460 Mich 590, 598 n 2; 597 NW2d 113 (1999). Indeed, in the very case at bar, we have stated:
Although Oakland Co dealt with MOS claims, as we noted in Judicial Attorneys Ass’n, supra at 598 n 2, that does not make it “inapplicable to an analysis of the second sentence of § 29.” Thus, the requirements of POUM claims are, in this respect, similar to MOS claims. [Adair, 470 Mich at 120 n 13.]
While MOS claims are aimed at existing services or activities already required of a local unit of government and POUM claims address future services or activities, *501 both provisions require a claimant to quantify the necessary costs of state-mandated activities. The fact that this case is one for a declaratory judgment and not a claim for money damages[7] does not and cannot change the constitutional requirement that the state need only fund mandates that will result in “necessary increased costs.”[8] If plaintiffs are not required to demonstrate that a state requirement will, in fact, result in the actual reallocation of funds or out-of-pocket expenses, then there has been no showing of any necessary increased costs that will be incurred.
B. THE MAJORITY’S ANALYSIS
The Court of Appeals held that plaintiffs only had to show a complete failure to provide funding for an increased or new level of services or activities in order to prevail as POUM plaintiffs. Adair, 279 Mich App at 514-515. The majority itself seems to agree, stating:
*502 [A] plaintiff need only establish that the state imposed on it a new or increased level of activity without providing any funding to pay for it. The burden then shifts to the state to show (1) that it is not required to pay for it because the new or increased level of activity did not result in increased costs or (2) that those costs were not “necessary” under MCL 21.233(6).
This formulation, however, is inconsistent with Const 1963, art 9, § 29. A POUM plaintiff must establish more than the state’s failure to fund an increase or new level of service or activity. Under the majority’s standard, the state will be required to prove that a POUM plaintiffs new or increased level of activity did not result in increased costs or that the increased costs were not necessary.[9] There is no basis for shifting this burden of proof onto the state.[10] The prohibitory language in Const 1963, art 9, § 29 in no way indicates that a plaintiff merely has to show an unfunded new or increased level of activity and the burden will then shift to the state to prove that no increase in costs occurred or that any increased costs were not necessary. Once *503 again, nothing in Const 1963, art 9, § 29 supports the majority’s conclusion that the burden ever shifts away from the plaintiff onto the state. In addition, if plaintiffs are not required to establish a net increase in costs, this could result in litigation every time the state requires reporting, technology, or format changes. The majority’s holding fails to recognize that a POUM plaintiff must show that its necessary costs increased. The majority’s formulation never inquires whether a plaintiff has shown an increase in costs. Rather, it only inquires whether a POUM plaintiff has shown an unfunded new or increased level in an activity or service.[11] The majority’s standard also fails to require a POUM plaintiff to prove that increased costs were necessary. It simply assumes the existence of necessary increased costs whenever there has been a mandated increase in an activity or service absent funding (unless the state can prove otherwise). In order to show an “increase” in costs, there must be some determination of a baseline level and a comparison of before-and-after numbers— whether real or projected.[12] This is the only way a POUM plaintiff can show whether an increase has actually occurred. Finally, the majority’s standard also fails to take into account that some increased costs that are necessary may nonetheless be de minimis under *504 MCL 21.232(4). This is directly contrary to Oakland Co, 456 Mich at 165 (“[T]he trial court must decide what costs are necessary .. . costs, including whether any fall within the de minimus [sic] exclusion.”).
When this case was before us in 2004, we cited with approval the following language:
“[F]uture plaintiffs must allege the type and extent of the harm so that the court may determine if a § 29 violation occurred for purposes of making a declaratory judgment. In that way, the state will be aware of the financial adjustment necessary to allow for future compliance.” [Adair, 470 Mich at 119-120 (citation omitted).][13]
Notwithstanding our earlier statement that a POUM plaintiff must allege both the “type” and “extent” of harm, and under MCR 2.112(M) must do so with “particularity,” the majority today inconsistently adopts a standard that reheves a POUM plaintiff of having to make any such showings. As we indicated in 2004, this deprives the state of threshold information on the basis of which to make necessary financial adjustments. Under the formulation the majority adopts today, the state is afforded no notice of what it must do to comply with the Headlee Amendment and is left only to guess at the size of the financial adjustment, and of the magnitude of the appropriation required, in order to comply with an adverse declaratory judgment.[14]
*505 C. “INCREASED COSTS”
Notwithstanding the majority’s holding that a POUM plaintiff need only prove an increase in an activity or service in conjunction with an absence of funding, the majority does acknowledge the paucity of evidence of increased costs to which the special master referred.[15] However, in the vacuum left by plaintiffs themselves in failing to offer evidence of increased costs, the majority has apparently scoured the voluminous record in this case and has uncovered the following examples of increased costs: (1) the need to hire additional personnel, (2) the need to reassign staff or pay them overtime to help meet the recordkeeping requirements, and (3) the need to purchase and update computer software.
When examined, this “evidence” falls short of establishing a net increase in necessary costs. First, plaintiffs did not submit actual evidence of the costs allegedly spent for additional staff. Indeed, there was no testimony whatsoever establishing a baseline against which one could compare the alleged increase in staff costs.[16] Second, while there was testimony about purchasing new software and updating software, nothing in the record established that plaintiff school districts were, in fact, required to purchase or update that software. As the special master said, “some local districts and [intermediate school districts] incurred actual costs for programming changes, but most did not. . . .” (Emphasis added.) Therefore, it is difficult to conclude that those schools that did incur such costs did so necessarily. *506 Finally, concerning evidence of increased overtime time costs, only a single witness testified about the receipt of less than $100 for such overtime, a clearly de minimis amount.
The majority asserts that the increase in costs on the part of plaintiff school districts exceeded the de minimis threshold of $300. While there was indeed testimony to that effect, the majority’s formulation improperly relieves future plaintiffs of having to prove that their net increase in costs was more than de minimis, notwithstanding the Headlee implementing act’s provision that a “necessary cost” does not include a cost that does not exceed $300 a claim. MCL 21.232(4); MCL 21.233(6).
D. "NET COSTS”
The majority correctly observes that MCL 21.233(6) provides that the “net cost” shall be the “actual cost to the state if the state were to provide the activity or service . . . ,”[17] Yet it fails to note that plaintiffs made no effort to show what the costs to the state would have been if the state itself had provided the increased *507 recordkeeping.[18] Thus, plaintiffs’ claim should also be denied for failure to present any evidence establishing a net increase in costs.
The majority concedes that the statutory terms “net cost” and “actual cost” “suggest a quantifiable dollar amount.” Yet, inexplicably, it proceeds to dispense with this concession and holds that a POUM plaintiff need not quantify the plaintiffs actual necessary increased costs. The majority even goes so far as to state that “it is the Legislature’s burden to demonstrate that those costs were not ‘necessary’ under one or more of the exceptions in MCL 21.233(6)(a) to (d).” But under Const 1963, art 9, § 29, it is the plaintiff’s burden to show an increase in necessary costs. For the majority to relieve a POUM plaintiff of the obligation to show increased costs, and that such increased costs were necessary, is contrary to Const 1963, art 9, § 29. The majority has no authority to reduce plaintiffs’ burden of proof or to place the burden on the state to prove that costs did not increase or that any increased costs were unnecessary. By its reallocation of these burdens, the majority effectively eliminates the requirement that a POUM plaintiff prove that the increased costs were necessary. This is in direct contravention of the language of our constitution, which only requires reimbursement of “any necessary increased costs.” Const 1963, article 9, § 29. That provision makes clear that the ratifiers of the Headlee Amendment did not intend that the state be required to enact an appropriation when a local unit of government has not proved specific *508 necessary increased costs associated with a new or increased level of activity or service.
E. QUANTIFYING COSTS
Despite 10 days of testimony from at least 17 witnesses, plaintiffs made no effort to quantify the school districts’ necessary increased costs. This is not surprising in view of the fact that plaintiffs believed, incorrectly in my judgment, that they were under no obligation to make such a showing. The majority overlooks this failure of proofs and holds that a POUM plaintiff is not required to quantify its necessary increased costs because a POUM claim for declaratory judgment is designed only to challenge a mandate before it takes effect. The majority further suggests that if this case had proceeded to a prompt resolution, plaintiffs could not have provided costs incurred before and after implementation of the recordkeeping requirements. That is, plaintiffs should not be required to show the school districts’ before-and-after costs when it would have been impossible at a sufficiently early juncture to do so, even though plaintiffs could have shown before-and-after costs following the several-year delay that occurred before presenting evidence to the special master.
The majority’s suggestion that it might be “impossible” for a litigant in a declaratory judgment action to show an anticipated increase in necessary costs is mistaken.[19] Civil plaintiffs routinely prove entitlement to future economic damages,[20] and schools routinely *509 adopt budgets that project future costs and expenses. The Uniform Budgeting and Accounting Act, MCL 141.421 et seq., mandates a budgeting system for various local governmental units in Michigan, which include public schools. MCL 141.422d(4); MCL 141.434. MCL 141.435(1) provides:
The recommended budget shall include at least the following:
(a) Expenditure data for the most recently completed fiscal year and estimated expenditures for the current fiscal year.
(b) Aji estimate of the expenditure amounts required to conduct, in the ensuing fiscal year, the government of the local unit, including its budgetary centers.
MCL 141.422a(4) further provides: “ ‘Budget’ means a plan of financial operation for a given period of time, including an estimate of all proposed expenditures from the funds of a local unit and the proposed means of financing the expenditures.” Thus, in the case of a mandated increased activity or services, a POUM plaintiff that has its claim heard before actual increased expenses have been incurred need simply present evidence explaining how much it is currently spending to perform the service or activity and how much extra, i.e., the projected amount of “increase,” it anticipates it will have to spend carrying out the increased level of service or activity. And in the case of mandated new activities or services, a plaintiff need only present evidence that it currently spends no money on the service or activity, but anticipates incurring specific necessary costs that are not de minimis once the mandate becomes effective. Given that estimates of increased expenses are ordi *510 narily quantified in budgets, it is reasonable to conclude that a witness can summarize and provide a reasonable estimate of an anticipated increase in necessary costs.[21] Ideally, a POUM claim will be decided before the projected necessary cost increases become actual increases. But in situations such as the case at bar, where plaintiff school districts had been complying with the mandates for several years before trial, actual necessary increased costs, if they exist, should not be difficult, much less insurmountable, to establish. In any event, proof of specific necessary increased costs, projected or actual, is essential in order to verify the legitimacy of a POUM claim.[22]
V CONSEQUENCES
Apart from the fact that the majority’s interpretation is contrary to the law and the Michigan Constitution, there are significant practical consequences to their interpretation that will transform the Headlee Amendment over time from a provision limiting public expenditures into a provision facilitating such expenditures. As we stated in Durant, 424 Mich at 378, the Headlee Amendment “was proposed as part of a nationwide *511 ‘taxpayer revolt’ in which taxpayers were attempting to limit” state spending. The “voters .. . were striving to gain more control over their own level of taxing and over the expenditures of the state.” Id. at 383. “Headlee is fundamentally a taxpayers’ amendment, enacted for the primary purpose of relieving the electorate from overwhelming and overreaching taxation.” Durant v Michigan, 456 Mich 175, 214; 566 NW2d 272 (1997).
First, under the majority’s reduced burden of proof, a POUM plaintiff will be entitled to prevail in a declaratory judgment action whenever the state has mandated an unfunded increase in the level of an activity or service and the state cannot establish that costs did not increase or that any increase was not necessary. Yet under the actual language of Const 1963, art 9, § 29, a POUM plaintiff is entitled to prevail only if it can show that some increase in the level of an activity or service was necessary and that it was not de minimis. As a result, the Legislature will effectively be required to enact an accompanying appropriation to every statute that mandates an increase in the level of an activity or service — even if there are no necessarily increased costs, and even if any such increased costs are merely de minimis — unless it is willing to undertake the risk that the state will eventually be able to sustain in court its burden of proof that a POUM plaintiffs costs did not increase or that any such increased costs were not necessary.
Second, under the majority’s new standards, the Legislature in future Headlee Amendment situations will be likely to overestimate the necessary levels of accompanying appropriations when it has mandated an increased level of activity or service. This is because, in the absence of proofs by a local unit of government that it has incurred quantifiable costs, estimated levels of *512 accompanying appropriations will entail nothing more than speculation. The cost of an underestimated appropriation by the state will be to invite litigation and to risk paying a POUM plaintiffs attorney fees if that litigation is lost. Better, then, to overestimate and thereby avoid litigation and attorney fees. That is, the guesswork introduced into the Headlee Amendment process by the majority, and the attendant budgetary uncertainties on the state’s part, can only have an adverse fiscal impact on the very persons that the amendment was designed to protect — the taxpayers.
Third, local units of government, which in the past may have simply absorbed reasonable expenses stemming from mandates by either working harder or more efficiently, are now incentivized to maintain the status quo and file lawsuits in response to all new mandates on the grounds that each such mandate has imposed additional obligations or costs. The majority’s standards create an incentive for local units of government to litigate Headlee Amendment claims on the theory that every new mandate has unconstitutionally burdened that local unit, rather than incentivizing the local unit to make do with existing resources by working in a harder or more efficient manner to absorb such burdens.
Finally, litigation expenses will only increase as a consequence of the majority’s Headlee Amendment process. The dismantlement of the quantification requirement, the erosion of the “necessary” and “de minimis” conditions for a Headlee claim, the distortion of burden-of-proof obligations, and the general sense of uncertainty caused by the elimination of traditional obligations of POUM plaintiffs to prove their claims will all lead inevitably to increased litigation between the state and local units of government. I need not dwell at *513 great length on the obvious fact that in such litigation, public entities are involved on both sides, and the taxpayers are responsible for the costs of litigation and attorney fees on both sides.
VI. CONCLUSION
Consistently with article 9, § 29 of the Michigan Constitution and the Headlee implementing act, I would hold that POUM plaintiffs must prove specific necessary increased costs, projected or actual, that are more than de minimis in order to establish their entitlement to declaratory judgment under the POUM provision. For all the reasons set forth above, I would reverse the judgment of the Court of Appeals and remand for entry of summary disposition for defendants on the ground that plaintiffs failed to establish a POUM violation because they failed to submit proof of specific necessary increased costs through the reallocation of funds or out-of-pocket expenses required by the state’s new recordkeeping requirements.
Corrigan and Young, JJ., concurred with Markman, J.

 The majority also holds that plaintiffs are entitled to recover their costs, including attorney fees, as prevailing parties because one of their 21 claims was sustained. Because I find that plaintiffs should not prevail on the merits, I do not join this part of the majority’s opinion either.

 EO 2000-9 established the Center for Educational Performance and Information (CEPI) and required plaintiff school districts to actively participate in collecting, maintaining, and reporting various types of related data.

 The Headlee Amendment vests original jurisdiction in the Court of Appeals for claims arising under its provisions. Const 1963, art 9, § 32. Special pleading requirements for such actions are found in MCR 2.112(M).

 We did not grant defendants’ application for leave to appeal the Court of Appeals’ determination that the recordkeeping requirements amounted to both new and increased levels of activities and services. We also did not grant leave to appeal to consider defendants’ argument that this case should not be viewed as a POUM case because of a 2002 appropriation.

 MCL 21.233(6) provides, in part:
“Necessary cost” means the net cost of an activity or service provided by a local unit of government. The net cost shall be the actual cost to the state if the state were to provide the activity or service mandated as a state requirement, unless otherwise determined by the legislature when making a state requirement. Necessary cost does not include the cost of a state requirement if the state requirement satisfies 1 or more of the following conditions:
(a) The state requirement cost does not exceed a de minimus [sic] cost.
(b) The state requirement will result in am offsetting savings to an extent that, if the duties of a local unit which existed before the effective date of the state requirement are considered, the requirement will not exceed a de minimus [sic] cost.
(c) The state requirement imposes additional duties on a local unit of government which can be performed by that local unit of government at a cost not to exceed a de minimus [sic] cost.

 MCL 21.232(4) provides:
“De minimus [sic] cost” means a net cost to a local unit of government resulting from a state requirement which does not exceed $300.00 per claim.

 In this regard, I note that when this Court remanded this case to the Court of Appeals in 2006, Chief Justice Kelly included a separate statement indicating that she would remand so that the Court of Appeals “can rule on the merits and find damages, if any.” Adair, 474 Mich at 1074 (Kelly, J., concurring) (emphasis added). Plaintiffs, however, are not seeking damages.

 Const 1963, art 9, § 29. Pursuant to MCR 2.605(A), a court may issue a declaratory judgment, and a court “is not precluded from reaching issues before actual injuries or losses have occurred.” Shavers v Attorney General, 402 Mich 554, 589; 267 NW2d 72 (1978). But this allowance cannot be used to reduce a plaintiffs burden of proof for the cause of action for which it is seeking a declaration. As we stated in Associated Builders & Contractors v Dep’t of Consumer & Indus Servs Dir, 472 Mich 117, 126; 693 NW2d 374 (2005), the “actual controversy” and the “interested party” requirements of MCR 2.605(A)(1) mean that a party seeking a declaratory judgment must have a concrete and particularized actual injury in fact. The “particularized” requirement surely reinforces the idea that Headlee plaintiffs are required to quantify their “necessary increased costs.”

 One has to wonder how the state will ever be able to “prove” what a local unit of government’s costs were. It would appear that the state will be required to audit every POUM plaintiffs books and that extensive and intrusive discovery of local budgetary information may have to occur. The majority disputes the notion that its holding will require the state to prove what a local unit of government’s increased costs are. This disavowal seems misplaced since the majority specifically states that once a POUM plaintiff meets its initial burden, it is entitled to a declaratory judgment “unless defendants demonstrate that plaintiff school districts’ costs were not increased as a result of the requirements” and that one of the questions before us is “whether the increase in the recordkeeping requirements resulted in increased costs to plaintiff school districts.” Ante at 483 (emphasis added).

 Indeed, HB 5800, which is pending in the Michigan House of Representatives, includes language that would shift the burden of proof onto the state to prove compliance with §§ 25 to 31 of article 9 of the state constitution. See proposed MCL 600.308e(2).

 To be clear, my point is that the majority’s formulation fails to require a POUM plaintiff to show an increase in necessary costs. The fact that the majority believes there were, in fact, proofs of increased costs in this case does not change the fact that its legal formulation relieves future POUM plaintiffs of having to establish an increase in necessary costs. This Court is attempting to formulate the law, and not to merely resolve the instant case.

 Surely this is “ ‘the sense most obvious to the common understanding’ ” and one that “ ‘reasonable minds, the great mass of the people themselves, would give it.’ ” Traverse City Sch Dist v Attorney General, 384 Mich 390, 405; 185 NW2d 9 (1971), quoting Cooley, Constitutional Limitations (emphasis omitted).

 Indeed, in 2007 we placed this very language into MCR 2.112(M), which provides, in relevant part: “In an action involving Const 1963, art 9, § 29, the plaintiff must state with particularity the type and extent of the harm and whether there has been a violation of either the first or second sentence of that section.” (Emphasis added.)

 Indeed, when we remanded this case to the Court of Appeals in 2006, we instructed it to “apply the provisions of MCL 21.231 et seq. and the definitions contained therein.” Adair, 474 Mich at 1074. Notwithstanding, the Court of Appeals failed altogether to discuss the de minimis exception of MCL 21.232(4).

 Once again, the special master specifically stated that plaintiffs had adduced “little evidence” of local districts’ “incurring actual additional costs or expenditures as a result” of the new recordkeeping requirements.

 There was no evidence comparing costs incurred to report data before the creation of the CEPI with costs incurred to report data afterward.

 A question was asked at oral argument regarding whether the definition of “net cost” in MCL 21.233(6) is consistent with Const 1963, art 9, § 29, which contemplates an increase in cost to a local unit of government as opposed to the cost the state would incur. Plaintiffs’ counsel responded by stating that this issue had not even been indirectly raised in this case. He also declined the opportunity to argue that the statutory definition of “net cost” is compatible with the constitution. Under these circumstances, I will not further address the issue other than to observe that it might well be argued that the statute defines “net cost” by reference to hypothetical costs to the state only as a proxy for determining whether the required new or increased activity or service will impose actual necessary increased costs on the local unit of government. In any event, subdivisions (a) to (c) of MCL 21.233(6) require us to look at the “actual” costs to the local unit of government to determine whether they are de minimis or are offset by other savings. See note 5 of this opinion.

 The transcript from oral argument indicates the following exchange:
[Question to plaintiffs’ counsel]-. [D]id you put in proofs of what it would cost the state to do the CEPI reporting?
[Answer]: No, we did not your honor.

 See, e.g., Durant v Dep’t of Ed (On Third Remand), 203 Mich App 507, 514; 513 NW2d 195 (1994), in which the Court of Appeals said that “actual costs would he satisfactory as a prima facie indicator of ‘necessary costs,’ ” “whether based on realized costs or theoretical costs ... .”

 See, e.g., M Civ JI 50.06 (future damages); M Civ JI 53.03 (future damages — non-personal-injury action); Patek, McLain, Granzotto & *509 Stockmeyer, 1 Michigan Law of Damages and Other Remedies (ICLE), § 4.10, pp 4-7 to 4-10 (discussing of future-earning-capacity claims); id., § 10.10, p 10-9 (discussing future damages).

 Although plaintiffs were not required to show the exact dollar amount of underfunding for school districts statewide, they were required to show a quantified projected increase in necessary costs beyond those that were de minimis, i.e., the particularized extent of the harm suffered, and they did not.

 To be sure, plaintiffs may have established that the new requirements are burdensome and require additional staff time. However, this is not the equivalent of the considerably more specific, and rigorous, requirements of our constitution. The majority is mistaken when it asserts that Const 1963, art 9, § 29 does not suggest that POUM plaintiffs must prove how much their costs increased. To reiterate, the word “increase” clearly implies the necessity of before-and-after numbers. By providing such numbers, a POUM plaintiff can satisfy the constitutional requirement that it show how much its necessary costs have increased.